STATE EX REL. ATTORNEY GENERAL, Appellant, vs. NOR-CROSS, Respondent.

*April 15—September 24, 1907.*

*Waters: Navigability of river: Judicial notice:* Quo warranto: *Nature of action: Extent of relief: Forfeiture of franchises: Pleading: Demurrer: Limitation of actions.*

1. Where a complaint alleges that a river is navigable in fact for some public purposes the court cannot, on demurrer, take judicial notice that the river is not so navigable.
2. The decision of the supreme court in *State v. Carpenter,* 68 Wis. 165, as to the nonnavigability of Rock river and as to judicial notice thereof, does not justify a court in holding that the nonnavigability of that river for any public purpose or any kind of navigation, at all points of the river and for all time, is such a matter of judicial knowledge that the state will not be heard to aver or offer evidence of its navigability.
3. An action of *quo warranto* under sec. 3466, Stats. (1898), is a civil action to redress a public wrong or enforce a public right.
[4. Whether in such civil action the state may have the remedy of seizure or forfeiture of a valid franchise because of abuse or misuser thereof in claiming or exercising greater rights thereunder than were really granted, not determined.]
5. In *quo warranto,* where there has been usurpation, under a lawful franchise, of powers in excess of those granted, although the

state may claim forfeiture of the whole franchise judgment may be only of ouster of the excess unlawfully usurped.

6. A complaint is good on demurrer if it state a good cause of action for some relief, although less than that demanded.

7. Authority granted to certain persons by act of the legislature to build and maintain a dam across Rock river upon lands owned by them and to use, or to sell or lease the right to use, the water of the river for power, with limitations and conditions as to the height of the dam, etc., is a "franchise" within the meaning of sec. 3466, Stats. (1898).

8. In an action of *quo warranto* a complaint alleging that the successor of the grantees of such authority is unlawfully maintaining the dam in violation of the limitations and conditions prescribed by the granting act, that he claims the right so to do, and that he has thereby usurped powers and franchises which he has no right to exercise, and praying that the whole franchise granted be forfeited, is *held* to state a good cause of action, at least of ouster from the exercise of the power or franchise wrongfully claimed.

9. A demurrer on the ground that the cause of action is barred by the statute of limitations will not be sustained unless the whole right of action appears to be so barred.

APPEAL from an order of the circuit court for Rock county: B. F. DUNWIDDIE, Circuit Judge. *Reversed.*

*Quo warranto.* The appeal is from an order sustaining a demurrer to the complaint.

For the appellant there was a brief by the *Attorney General* and *Bird, Gilman & Hobbins,* of counsel, and oral argument by *G. W. Bird.* They argued, among other things, that whether a river wherein the tide does not ebb and flow and whose navigability is not historic is navigable in fact, is a question of fact of which a court cannot take judicial notice, but is to be determined by evidence as to its size, capacity, character, and condition; and the fact of navigability is admitted by a general demurrer to a pleading alleging it. *Waller v. McConnell,* 19 Wis. 417; *Jones v. Pettibone,* 2 Wis. 308; *Cobb v. Smith,* 16 Wis. 661; *Leihy v. Ashland L. Co.* 49 Wis. 165, 169; *N. Y. & B. S. & L. Co. v. Brooklyn,* 71 N. Y. 580, 584, 585; *People ex rel. Adsit v. Allen,*

42 N. Y. 378, 381; *Rhodes v. Otis,* 33 Ala. 578; *Barnes v. Racine,* 4 Wis. 454, 465. The historic character of Rock river is that it is navigable in fact, and has been so treated by the United States government, the territorial and state governments, and by this court, and has been generally regarded as navigable by the people. Art. IV, Ordinance of 1787; sec. 1, art. IX, Const. Wis.; No. 9, Laws of 1840–41 (p. 34); ch. 34, R. S. 1849; sec. 2, ch. 41, R. S. 1858; secs. 1596, 1607, R. S. 1878; secs. 1596, 1607, Stats. (1898); sec. 4, ch. 49, Local Acts of 1839 (p. 99); *Cobb v. Smith,* 16 Wis. 661, 664; *Wood v. Hustis,* 17 Wis. 416; *State v. Carpenter,* 68 Wis. 165, 171; *Att'y Gen. v. Eau Claire,* 37 Wis. 400, 446–448. Without legislative permission a dam cannot lawfully be maintained in and across a river which has been meandered and returned as navigable by the surveyors employed by the United States government, whether it does or does not interfere with navigation, or is or is not maintained by the riparian owners of both banks. No. 9, Laws of 1840–41 (p. 34); ch. 34, R. S. 1849; sec. 2, ch. 41, R. S. 1858; sec. 1596, Stats. (1898); *Wis. River Imp. Co. v. Lyons,* 30 Wis. 61; *Jones v. Pettibone,* 2 Wis. 308; *Clute v. Briggs,* 22 Wis. 607, 610; *Barnes v. Racine,* 4 Wis. 454, 465; *Charnley v. Shawano W. P. & R. Imp. Co.* 109 Wis. 563. When a particular river by name has been declared navigable by statute from the beginning of the territorial government to the present time, the courts should treat it as navigable, at least until the contrary is made to appear by competent evidence. *State v. Wabash P. Co.* 21 Ind. App. 167, 51 N. E. 949.

For the respondent there was a brief by *Ruger & Ruger,* attorneys, and *J. V. Norcross,* of counsel, and oral argument by *Mr. William Ruger* and *Mr. Norcross.* They contended, *inter alia,* that the cause of action is criminal in its nature. Secs. 2593–2599, Stats. (1898); *State ex rel. Att'y Gen. v. Portage City W. Co.* 107 Wis. 441, 448–451; *People ex rel.*

*Att'y Gen. v. Utica Ins. Co.* 15 Johns. 357, 387, 389; *Thompson v. People,* 23 Wend. 537, 582; *State ex rel. Wood v. Baker* and *State ex rel. King v. Kromer,* 38 Wis. 71, 81, 82; *S. C.* 38 Wis. 548; *State ex rel. Heim v. Williams,* 114 Wis. 402, 405, 406; Cooley, Blackst. book 3, pp. 262, 263; Winslow, Forms, pp. 827, 828; *State ex rel. Hartung v. Milwaukee,* 102 Wis. 509, 512; *Charnley v. Shawano W. P. & R. Imp. Co.* 109 Wis. 563, 568. Such being the nature of the action, the complaint and secs. 3466 and 3475 will be strictly construed. Facts which the court will judicially notice are to be taken as true; and allegations inconsistent therewith will be disregarded. *State ex rel. Att'y Gen. v. Foote,* 11 Wis. 14, 16; *State v. Carpenter,* 68 Wis. 165, 171–175; *So. Pac. R. Co. v. Groeck,* 68 Fed. 609. Public franchises, only, may be the subject of such an action; that is to say, the franchise must consist of a valuable privilege derived by the grantee perforce of a legislative grant, based on a consideration moving from the grantee to the public, and which creates a contract and in and of itself constitutes property. 19 Cyc. 1451, 1452, 1459, 1460; *Morgan v. Louisiana,* 93 U. S. 217, 223; *Sellers v. Union L. Co.* 39 Wis. 525, 526, 527; *Wright v. Milwaukee E. R. & L. Co.* 95 Wis. 29, 35; *Stedman v. Berlin,* 97 Wis. 505, 509; *State ex rel. Att'y Gen. v. Portage City W. Co.* 107 Wis. 441, 450, 451; *State ex rel. Att'y Gen. v. Janesville W. Co.* 92 Wis. 496, 502; *People v. Thompson,* 23 Wend. 537. It must appear that the respondent is actually exercising such a franchise. *Att'y Gen. v. S. & St. C. R. Co.* 93 Wis. 604, 615, 616; *State ex rel. Vilter Mfg. Co. v. M., B. & L. G. R. Co.* 116 Wis. 142, 152, 153. It must appear that such a franchise is being so unlawfully exercised as to cause substantial injury to the public. *Stedman v. Berlin,* 97 Wis. 505, 509; *State ex rel. Att'y Gen. v. Janesville W. Co.* 92 Wis. 496; *State v. Carpenter,* 68 Wis. 165; *Thompson v. People,* 23 Wend. 537. It must appear that the injury to the public in such as will be redressed by the

judgment prescribed by sec. 3475, and is also such as cannot be adequately redressed by any less severe remedy. *State v. Carpenter,* 68 Wis. 165, 171, 172, 174; *State ex rel. Att'y Gen. v. Janesville W. Co.* 92 Wis. 496, 501, 502; *Peshtigo L. Co. v. Ellis,* 122 Wis. 433, 439; *Rust v. Conrad,* 47 Mich. 449, 11 N. W. 365; *Comm. v. Athearn,* 3 Mass. 285; *Goodrich v. Moore,* 2 Minn. 61; *Thompson v. People,* 23 Wend. 537, 582, 583; *People ex rel. Macey v. H. & C. T. Co.* 2 Johns. 190. See, also, 23 Am. & Eng. Ency. of Law (2d ed.) 607, 608. The complaint does not show the existence of any of the aforestated requisites of such a cause of action. It does not show that the respondent is exercising any public franchise. It does not show that he is exercising any franchise, inasmuch as he can lawfully maintain his dam by virtue of his private rights as a riparian proprietor. All rights which the state holds in Rock river are held in trust for the benefit of the public and cannot be alienated or impaired for the benefit of any private interests; and the legislature could not, for the benefit of the private interests of respondent's grantors, grant any privilege respecting Rock river which would be a public franchise. *McLellan v. Prentice,* 85 Wis. 427, 444, 445; *Priewe v. Wis. State L. & L. Co.* 93 Wis. 535, 550, 551; *Rossmiller v. State,* 114 Wis. 169, 179, 180.

The following opinion was filed May 21, 1907:

Timlin, J. The complaint avers that the action is brought by the attorney general under the provisions of sec. 3466, Stats. (1898); that Rock river is a navigable stream rising in or near Fond du Lac county, in this state, thence flowing in a southerly direction through the counties of Dodge, Jefferson, and Rock in this state, and thence into the Mississippi river, and that in the southerly part of Jefferson county is Lake Koshkonong, which has an extreme length of about seven miles and an extreme width of about four miles. Rock

river flows through said lake, which is in fact a widening of
Rock river and is navigable. Both Rock river and Lake
Koshkonong had been meandered and returned as navigable
by the United States surveyors before the state was organ-
ized, and the river is declared navigable by statute of this
state up as far as township 14 in range 15 in this state, and
was at the time of the organization of the state government,
ever since has been, and now is navigable in fact for the float-
ing of logs, lumber, timber, rafts, and small water craft.

There is pleaded an act of the legislative assembly of the
territory of Wisconsin approved April 7, 1843, authorizing
Clouden Stoughton and Luke Stoughton to build and main-
tain a dam across this river upon any land they might own
in sections 16 or 21, township 4 of range 12, if thereunto
duly authorized by competent authority, and to use the water
for propelling any kind of machinery, and to sell or lease the
right to use the water. Certain requirements of the act last
mentioned are set forth, and are substantially that said
grantees should not raise the dam more than four feet above
the ordinary height of water, should construct therein a suit-
able lock 120 feet between gates and twenty-four feet wide
for the passage of boats, barges, etc., the lock to be in readi-
ness at the time of completion of the dam. The grantees were
to attend without charge to the passage of boats, barges, etc.,
through said lock, and they were also required to construct a
slide or chute for the passage of rafts over the dam and to
permit the ascent and descent of fish. The construction of the
dam, lock, slide, and chute was required to be commenced
within one year and completed within three years. There
were also other provisions relating to the overflowing of lands
and a reserved right of repeal.

An act of the legislature of Wisconsin, approved March
15, 1851, is then pleaded. It is averred this act authorized
the same persons to build this dam and repealed in part and
modified the former act of the territorial legislature, and

contained the following requirements or conditions, namely: The dam should not be raised more than six feet above the ordinary height of water; as soon as Rock river should be improved and rendered navigable to said dam, the grantees should construct a lock 120 feet between gates and twenty-four feet wide for the passage of boats, barges, etc., and attend the same free of charge. This act declared it was not to be construed to authorize the flowing of lands owned by other persons without the consent of the latter, nor the raising of the water of the river or lake to the injury of mills then erected above the dam, nor so as to affect the rights of any one who might have commenced, or be interested in, the improvement of any water power. It is further averred that after March 15, 1851, Clouden Stoughton and Luke Stoughton commenced the erection of the dam and continued until its completion and maintained it ever since, but its capacity to hold, raise, and set back water has been increased from time to time, and it is known as the Indian Ford dam.

The complaint avers that the dam has been raised and is now more than six feet above the ordinary height of water in said stream; that no slide or chute was ever constructed or commenced; that up to about March, 1898, there were eight gates in the dam, each about five feet long and five feet high, so constructed as to be easily opened and closed, and by means thereof the height of water in the river could be regulated; and that up to about the spring of 1898 the height of water was so regulated, but that these gates were permanently closed in March, 1898, and since that time, and apparently by reason of such closing, large tracts of land adjacent to said lake were overflowed, made marshy, inaccessible, and practically useless. About or just prior to the year 1900 the owners of the dam caused the spaces formerly occupied by such gates to be permanently closed, describing how, and narrowed the dam by abutments so that since the year 1900 the waters of the river and lake have been caused to overflow upon 5,000 or

6,000 acres of valuable farming land, rendering it largely useless, causing some of the owners to abandon the same, depositing thereon large amounts of filth which contaminated the atmosphere and endangered the health of a large number of people, flooding the cellars of houses in the city of Fort Atkinson and affecting the health of the occupants, damaging and rendering impassable many highways, and overflowing the lands of others without their consent, causing damage, which is described. In short, the complaint contains averments in this particular showing, if true, the creation and maintenance of a public nuisance.

It is averred that many of the residents along said lake and river are the owners of water craft and desire to navigate the river below the dam, but by reason of the acts aforesaid are unable to do so, while others, resident taxpayers, desire to catch fish in said stream and lake, but by reason of the maintenance of the dam in its condition the fish are unable to pass through or over said dam.

It is then averred that the defendant *Pliny Norcross* is the owner of the dam, owner and possessor of the franchise rights and privileges aforesaid granted by the state to Clouden Stoughton and Luke Stoughton, and is now maintaining, operating, and keeping up the dam as before described, contrary to and in violation of the limitations and conditions prescribed by the acts of the legislature aforesaid, and usurped and intruded into and now unlawfully holds and exercises the said franchise, and has thereby intruded into and usurped powers and franchises which he has no right to exercise, and is now unlawfully holding and exercising rights and privileges not granted to him or his predecessors or grantors by the state of Wisconsin, without authority of law and in disregard of the reserved rights of the state and in contempt of its sovereign authority, and has been doing so for more than two years by maintaining the dam more than six feet above the ordinary height of water in said stream

without any lock, slide, or chute therein, by means of said dam overflowing lands not owned by him, without the consent of the owners, by raising the water to the injury of mills above the dam and thereby affecting the rights of others claiming an interest in water powers.

The prayer for relief is that the title of the defendant to the franchise created by said legislative acts be declared void and held for naught, and that he be ousted and excluded from claiming, holding, or exercising any of the rights or privileges sought to be conferred by said legislative acts, and that the franchise, etc., granted by said legislative acts be forfeited and reclaimed by and to the state of Wisconsin, and for such other and further relief as may be just.

This complaint was demurred to on the ground that it did not state facts sufficient to constitute a cause of action, and because the action was not commenced within the time limited by law, and because several causes of action had been improperly united. The trial court sustained the defendant's demurrer to the complaint, on the ground that, notwithstanding the averments of the complaint that Rock river is a navigable stream, and in contradiction of such averments, the judge of that court would take judicial notice that the river was not navigable in fact for logs, lumber, timber, or rafts, and that therefore this action could not be maintained.

This decision involves two propositions, neither of which we are willing to approve. The first is that upon a question of the kind presented by an assertion of navigability in fact for some public purposes the court could deprive a suitor of trial or hearing and foreclose him upon such inquiry by setting the court's own knowledge or judicial notice in opposition to the averments of his complaint. The second proposition is that, assuming lack of navigability in fact, there is no other public interest shown which could justify the attorney general in calling the defendant to account for usurpation, nonuser, misuser, or abuse of a franchise to construct and

maintain a dam on a river declared navigable by law. While vigilant of the rights of the defendant, it would be unsound and unnecessary by judicial determination to so curtail the powers of a sovereign state. In the defendant's legislative grants there is recognized *prima facie* the necessity for legislative grant, the possible future navigability of the river for boats and barges, the right of the state to authorize the improvement of the river in future in aid of navigation, the actual or probable navigability thereof for rafts and timber, the public right to have the fish ascend the river, and certain regulations with reference to overflow.

Both parties rely considerably on *State v. Carpenter,* 68 Wis. 165, 31 N. W. 730, as decisive of the question that the court will take judicial notice that Rock river is or is not a navigable stream. This, however, is a much narrower proposition than that determined by the circuit court. *State v. Carpenter, supra,* was a suit for injunction, brought by the attorney general for the state, to restrain the defendant from driving piles within the channel and within the low-water mark of this river, on the ground alone that such act affected the public by its interference with or obstruction of navigation. A preliminary injunction was dissolved by the circuit court upon answer and affidavits, and many facts showing the nonnavigability of the river at the point in question and the lack of interference with navigation were made to appear by the answer and affidavits. It is not quite clear what the court meant by the following paragraphs of the opinion:

"Outside the record, we may take judicial knowledge that said river, for a great many years, within cities and villages and in other places, has been obstructed by milldams, bridges, and buildings, in a similar manner, through this state and the state of Illinois, and that said river has not been practically and in fact navigable or used, needed, or required, for navigation in the way of transportation or travel. This being the condition of Rock river within the city of Janesville and else-

where, was it an abuse of discretion for the circuit court to dissolve the injunction? . . .

"The legal proposition made and urged with great learning and ability by the learned counsel of the appellant, in respect to the navigability of Rock river, as far as the Ordinance of 1787, the constitution, and many laws of the state can make it so, is incontrovertible, and this court is bound to take judicial knowledge that it is a navigable stream and public river of this state; and that it is unlawful to obstruct it there can be no question. The public and all persons have the right to its free and unobstructed use for the purposes of navigation at all times and under all circumstances."

But it cannot be held to mean that the question of the nonnavigability of Rock river for any public purpose or any kind of navigation at all points of the river and for all time is such a matter of judicial knowledge that the state will not be heard to aver or offer evidence to the contrary. The affirmative proposition that a certain river is navigable may well be judicially noticed in many instances. That a river is not navigable may sometimes be the subject of judicial notice; but considering the various degrees of navigability, and the various kinds of navigation and the various appliances for the purposes of navigation, and the differing conditions along different portions of the same river, there must still remain a large class of cases in which to determine this question by judicial notice would deprive the party averring navigability or nonnavigability as the foundation of his right of the opportunity of trial and hearing. *U. S. v. Rio Grande D. & I. Co.* 174 U. S. 690, 19 Sup. Ct. 770. As to such matters the rule, we think, is as stated in 4 Wigmore, Ev. § 2567:

"That a matter is judicially noticed means merely that it is taken as true without the offering of evidence by the party who should ordinarily have done so. But the opponent is not prevented from disputing the matter by evidence, if he believes it disputable."

The judgment of this court, or of any court of competent jurisdiction, properly pleaded in answer and wherever ad-

missible because between the same parties or those privy with
them, or because involving a matter of repute, status, or dec-
laration, may no doubt be received in evidence with proof
that the conditions then existing are unchanged for the pur-
pose of establishing, or tending to establish, the fact of non-
navigability; but that is quite a different thing from refer-
ring to such judgments for judicial knowledge in contraven-
tion of express averments of the complaint relating to present
conditions.

In this state *quo warranto* is a civil action to redress a pub-
lic wrong or enforce a public right, and the complaint ex-
pressly avers that the action is brought under sec. 3466,
Stats. (1898), but at the same time in its scope appears to
go much beyond the provisions of that section, which seem
to be limited to actions brought against one who "shall
usurp, intrude into or unlawfully hold or exercise . . . any
franchise within the state." This section has many of the
features of Stat. 9 Anne, c. 20, which has been handed down
to us through the statutes of New York *mutatis mutandis*
and does not mention misuser, abuse, or nonuser of a fran-
chise. The different judgments that might be entered in
*quo warranto* at common law are mentioned in 5 Jacob's
Law Dictionary (1811 ed.) 375, where the author gives a
quotation from the year book of 15 Edw. IV., as follows:

"That where it clearly appears to the court that a liberty is
usurped by wrong, and exercised on no title, either by the
king's grant or otherwise, judgment only of ouster shall be
entered. But that where it appears that the king or his an-
cestors have once granted a liberty, and the liberty is for-
feited by misuser or nonuser, the judgment shall be that it
be seized into the king's hands."

"Where grants appear, but either the parties are not capa-
ble of taking, or their liberty or privilege is not allowable by
law, the course has been to enter a mixt judgment both of
seizure and ouster. Sawyer's Arg. 17; Co. Ent. 537, 539*a;*
Palm. 1; 2 Rol. Rep. 113. In addition to the judgment of
seizure or of ouster, or of seizure and ouster, except only in

the case of ouster on disclaimer, there is also judgment that the defendants be taken to make fine to the king for the usurpation. And in this respect it seems the judgment in the information differs from that in the writ of *quo warranto*, for in the latter it is apprehended there could be no judgment of *capias pro fine*. The defendant was in the nature of a plaintiff; he made his claim; if he failed in making it good, the judgment was not *capias pro fine*, but *quod sit in misericordia*. Rast. Ent. 540*a*, pl. 1."

To substantially the same effect, Lewis's Bl. Comm. bottom pages 1236, 1237, and notes.

Under the foregoing synopsis of the ancient procedure prior to and under Stat. 9 Anne, c. 20, as well as under our statutes, there is no doubt that a defendant can be ousted from his possession of a franchise because he has not capacity to hold it, as in *State ex rel. Vilter Mfg. Co. v. M., B. & L. G. R. Co.* 116 Wis. 142, 92 N. W. 546, or under the former construction of the *quo warranto* statute by the courts of New York adopted and settled for this state by *State ex rel. Att'y Gen. v. Portage City W. Co.* 107 Wis. 441, 83 N. W. 697, an action may be maintained by the state under the authority of sec. 3463, Stats. (1898), against the grantee of a franchise who has substantially failed to perform the conditions of the franchise whereby the franchise has come to an end, to obtain a judicial declaration of that fact by judgment of ouster. But the judgment apparently applicable to an action under sec. 3466, *supra*, prescribed by sec. 3475, Stats. (1898), contains no provision for seizure or forfeiture of lawful franchises all the conditions of which have been complied with, but which have been abused or misused by grasping or usurping thereunder powers in excess of those granted. The statute does provide:

"When a defendant against whom such action shall have been brought shall be adjudged guilty of usurping or intruding into or unlawfully holding or exercising any . . . franchise or privilege judgment shall be rendered that such defendant be excluded from such . . . franchise or privilege."

Manifestly this is not the judgment the plaintiff mainly seeks. Can the state have in this action any judgment of seizure or forfeiture of the principal franchises held and exercised under the law of 1851? Or is the state limited to judgment of ouster of the defendant from those rights and privileges which it is averred he is exercising over and above or in addition to those lawfully granted? Sec. 3463, Stats. (1898), provides:

"The remedies heretofore obtainable by writs of *scire facias* and *quo warranto* and by proceedings by information in the nature of *quo warranto* may be obtained by civil action."

From this it would seem that the remedy of forfeiture of a valid franchise for abuse or misuser thereof, in claiming and exercising greater rights thereunder than were really granted, existed in this state. But sec. 3463 does not say that these remedies may be obtained by civil action under sec. 3466, and the history of the latter section, if we understand it, does not help us much toward such a conclusion.

Then, again, is forfeiture of estate upon conviction of having claimed and exercised too much, even though such estate consist of a franchise, consistent with the spirit of our institutions? Const. art. I, sec. 12; 2 Kent, Comm. 385, 368; 4 Kent, Comm. 426, 427. It is also noticeable that in case of a proceeding by the attorney general to forfeit the franchise of a corporation to exist as such, which is now usually the least valuable of franchises, there must first be an application to the supreme court and leave granted by that court on cause shown. Is it fairly conceivable that the more important franchises of an individual or corporation, which cannot be resumed by reincorporation under the general law, may be attacked and taken away with less ceremony, if not less cause, than the franchise to exist as a corporation? These questions will, no doubt, arise later in this case, but we are precluded from determining them on this appeal for the following reasons:

First, it is well settled that in *quo warranto*, although the

state may claim forfeiture and seizure of the whole, judgment may be only of ouster of the excess unlawfully usurped. *State v. Old Town B. Corp.* 85 Me. 17, 26 Atl. 947, and authorities cited. It is also a rule of pleading in this state that if the complaint states a good cause of action for some relief, although less than that demanded, the pleading is good on demurrer. *Moritz v. Splitt,* 55 Wis. 441, 13 N. W. 555; *Hawley v. Tesch,* 72 Wis. 299, 39 N. W. 483. Under the liberal construction required to be given pleadings by the laws of this state, we think the complaint states a good cause of action for some relief.

"The courts of this country have come to exercise, in the final disposition of *quo warranto* cases, that discretion which was originally only exercised in allowing the information to be filed; and they have come, also, to exercise some discretion when the proceeding is instituted by the state on the information of a state officer. These *quo warranto* proceedings are now commonly instituted of course, and without leave; and, if there is to be any discretion used about the relief at all, it must be used in delivering judgment." *State ex rel. Jackson v. Mansfield,* 99 Mo. App. 146, 72 S. W. 471.

This, of course, does not apply to cases where application is required to be made to the court for leave to commence the action in the first instance.

We have no doubt that the rights which the defendant has and claims under the statutes of 1843 and 1851 are in their essential nature franchises within the meaning of the law relative to *quo warranto*. *Valentine ex rel. Dudley v. Berrien Springs W. P. Co.* 128 Mich. 280, 87 N. W. 370; *State ex rel. Att'y Gen. v. Portage City W. Co.* 107 Wis. 441, 83 N. W. 697, and cases in opinion. See the word "franchise," 3 Words & Phrases, 2929. There is no misjoinder of causes of action in the complaint. No doubt much that is stated in the complaint appears on the face thereof to be barred by the statute of limitations; but in order to sustain a demurrer on this ground the whole right of action must be so barred.

If the complaint were to be taken as true, the defendant for the two years succeeding 1900 has kept up a continually recurring public wrong, claiming the right to do so under the franchise which he holds and which he is exercising for that purpose, and if this is true the complaint states a cause of action, at least for the purpose of ousting him from the exercise of such liberty or franchise so wrongfully claimed, which does not affirmatively appear to be barred by any statute of limitations.

*By the Court.*—The order of the circuit court is reversed, and the cause remanded for further proceedings.

CASSODAY, C. J., took no part.

A motion for a rehearing was denied September 24, 1907.