STATE EX REL. CITY OF SUPERIOR, Respondent, vs. DULUTH STREET RAILWAY COMPANY, Appellant.

*April 30—May 31, 1913.*

*Railroad commission: Public utilities: Street railways: Strikes: Compelling adequate service: Jurisdiction of courts:* Mandamus.

The legislature having clothed the railroad commission with full authority to act *quasi*-judicially in a case where a public utility corporation (in this instance a street railway company) has been rendered incapable of performing its public duty without submitting to such terms as its employees, acting in combination, may prescribe, and where, on behalf of the public, the furnishing of adequate service by such corporation is sought to be compelled,—and a judicial review of the determination of the commission having been provided for,—the courts should not, unless in an extraordinary emergency, interfere in the first instance by their coercive authority, but should leave the parties to their remedy before the commission.

APPEAL from a judgment of the superior court of Douglas county: JAMES WICKHAM, Judge. *Reversed.*

*Mandamus* proceeding to compel defendant to "immediately operate a sufficient number of cars, with reasonably efficient operators, and in such manner, over all its lines within the city of *Superior* as will give the public adequate street-car service equal to that given immediately prior to September 12, 1912, and that it operate its cars with such employees and in such manner as to avoid inciting the public to acts of violence," or show cause to the contrary.

Such was the mandate in an alternative writ of *mandamus* issued out of the superior court of Douglas county and served on defendant, based on a petition to this effect, leaving out the introductory matters showing appellant to owe the ordinary duty of a public utility street railway company to relator of affording reasonably adequate street-car service therein over its lines.

September 12, 1912, the railway company performed its duty as a public utility railway corporation in the city of *Superior* by affording reasonably adequate service over its lines in said city in the transportation of all persons desiring such service; but not thereafter. Its management has been hostile to its employees combining, having representative committees, and presenting grievances through such committees to the company, thus deterring them from doing so for fear of being discharged. The employees of the company on the Duluth part of the system, about September 9th, organized a union for the purpose aforesaid, by reason whereof several of the prominent of them in the matter, were summarily discharged. For such treatment all operators on such part quit work and then a condition of lawlessness and rioting commenced because of the company trying to operate with new men and efforts of the old employees and their sympathizers to prevent it; causing danger to life and property. The company then insisted upon its operators on through cars over the Duluth-Superior line, making the entire course, and be-

cause thereof and of its general hostility to acting of employees as a union, those in *Superior* struck and the conditions existing in Duluth were, in a large measure, duplicated in *Superior;* the strife and violent conditions being general as to the whole system.   The *Superior* city employees are willing to resume work in operating cars therein, but not in Duluth while the strike is on there.   September 15th, they so offered to return and the offer was refused.   They are willing to so return now, at their former wages, under the further condition of being recognized as a union, permitted to act through committees in dealing with the company, and of there being no discrimination against any employee because of his belonging to the union.   The company nevertheless refuses to take back its old employees except upon its own terms and without any assurance for the future.   As good service as was formerly afforded is vitally necessary to the people of *Superior,* whereas the company is affording very inadequate service, operating a few cars at irregular intervals and by new and inexperienced operators, and refusing to operate a sufficient number of cars or employ efficient operators for those in service, or to deal on a reasonable basis with its old employees to the great prejudice of the people of the city of *Superior.*   The attitude and conduct of the company has caused such condition as to imperil the public peace, rendering it difficult, and at times impossible, to maintain order in the city.   If such company will desist from such course, resumption of adequate service in *Superior* can be readily accomplished, but failure to do so will result in a continuation of the condition of lawlessness to the detriment of the lives, health, and welfare of the people of the city.

In due course, appellant moved the court to quash the writ and demurred thereto for insufficiency.   The motion and demurrer were overruled.   This appeal is from the order closing the matter.

For the appellant there was a brief signed by *W. R. Foley,* attorney, and *L. K. Luse,* of counsel, and oral argument by *Mr. Luse.*

For the respondent the cause was submitted on the brief of *H. V. Gard* and *T. L. McIntosh.* They contended, *inter alia,* that where a duty is imposed upon a corporation by law (including ordinances), courts will enforce it by *mandamus. State ex rel. Wis. T. Co. v. Janesville St. R. Co.* 87 Wis. 72, 57 N. W. 970; *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 144 Wis. 386, 129 N. W. 623; *State ex rel. Grady v. C., M. & N. R. Co.* 79 Wis. 259, 48 N. W. 243; *Loader v. B. H. R. Co.* 14 Misc. 208, 35 N. Y. Supp. 996; *Loader v. A. A. R. Co.* 14 Misc. 208, 35 N. Y. Supp. 999; *People v. N. Y. C. & H. R. R. Co.* 28 Hun, 543; *State ex rel. Ellis v. A. C. L. R. Co.* 53 Fla. 650, 44 South. 213, 12 Am. & Eng. Ann. Cas. 359–370, 13 L. R. A. N. s. 320; *Union Pac. R. Co. v. Hall,* 91 U. S. 343; *Potwin Place v. Topeka R. Co.* 51 Kan. 609, 33 Pac. 309.

MARSHALL, J. The appeal raises the very grave question of whether, in case of a public utility corporation being rendered incapable of performing its public duty without submitting to such terms as its employees, acting in combination, may prescribe, thus causing injury to the public, it is competent for the court to interfere by its coercive authority and, directly or indirectly, compel submission on the part of the utility. That is the natural effect of such an order as was entered in this case. It left the appellant no recourse but to either surrender or appeal, since the trial court, as it had reason to suppose, was of the opinion that insistence upon not bowing to the demands of the employees was remediably unreasonable, rendering it futile to answer, as the facts from which the inference was drawn were not disputable.

It is a very great power of the court, if it has such power,

to do what was, seemingly, the effect of the order complained of.    It is not necessary to the decision of this case to determine whether it has such power or not.    It is very difficult, if not impossible, to place a limit on the equity power of the court, so far as its protective feature is concerned.    But whether to use that power and the extent of its use, must, generally, rest in the sound judgment of the chancellor.  · The greater the power, ordinarily, the greater the degree of judgment required in order to use it wisely, and never to abuse it.    The thing always to be kept in view in a case of this sort, is equality before the law.    Individual rights may be regulated legislatively and restrained judicially, for the purpose of conservation, but not unduly impaired or destroyed. Where the right on the one hand meets the right on the other, the court should not step in and take away one to permit supremacy of the other.    Where the right, especially in case of a public-service corporation as regards its performance of its *quasi*-public duty to unrestricted liberty of action, ends, must be, often, a very difficult question to solve and be dependable upon the just solution of complicated questions of fact—so complicated as to call for much hesitancy and the exercise of superlative judicial care before dictating an unconditional surrender of one side to the other.

With these remarks we pass to the question which is decisive of this case, not intending to suggest that an occasion. might not arise, or may have existed in this case, warranting the exercise of the equity authority of the court to solve the difficulty.

What has been said, suggests the advisability, if not the necessity, in such a situation as existed in this instance of having a tribunal before which all the facts can be fully investigated.    In no other way, it seems, can violated rights be redressed and violations of rights be prevented with any fair degree of certainty, without peril of violating, seriously,

the rights of one party in attempting to conserve those of another. No favoritism between parties, public or private, but absolute equality before the law, so far as that can practicably be established, is the very groundwork principle of our system. It is the public interest and mutuality of rights between private parties and between them and the public which is the great subject of solicitude in such controversies. Appreciating that, the people, acting through the lawmaking body, have provided a tribunal to act, *quasi*-judicially, in dealing originally with such questions as are raised in this case,—so far as they might otherwise be a subject for judicial interference, including interference in equity,—and provided a method of judicial review of its determination as regards whether unlawful or unreasonable. In that we have a comprehensive system which affords full hearing and investigation before condemnation, in recognition of the vital principles of natural justice.

Secs. 1797—2 to 1797—16, inclusive, of the Statutes cover the whole subject. They clothe the railroad commission with full authority to act in all controversies as regards the duties of public-service corporations of the class of the one in question, and prescribe a simple way of invoking its jurisdiction, and provide adequately for a judicial review, first in the circuit court and then in this court, if desired.

The new system did not absolutely take away any of the constitutional jurisdiction of the circuit court; but, the deference to the legislative will, which is due to a co-ordinate department of the government, requires that such jurisdiction shall not be exercised in any situation—which the legislature placed, as matter of administrative power, in that of the railroad commission as regards original action,—in the absence of some extraordinary emergency not liable to arise.

This species of duty not to act, even in case of the existence of power to act, is so regarded that a violation of it

takes the cast of jurisdictional error. *Meyer v. Garthwaite,* 92 Wis. 571, 66 N. W. 704; *Burnham v. Norton,* 100 Wis. 8, 75 N. W. 304. Not jurisdictional in the sense of entire want of power, rendering the act usurpatious and the result void, but in the sense of such manifest duty not to exercise the power, that the wrong of it should be classed as jurisdictional, and competency exist to efficiently raise the question in respect thereto at any time while competency remains to challenge the order or judgment involved, for judicial error. *Harrigan v. Gilchrist,* 121 Wis. 127, 224, 99 N. W. 909.

Under the foregoing rule, the court below must be considered as not having had jurisdiction to entertain the proceedings in question. It should have left the parties to the remedy prescribed by law before the special tribunal—the railroad commission. That is in harmony with the previous decisions of this court. *Frank A. Graham Ice Co. v. C., M. & St. P. R. Co., ante,* p. 145, 140 N. W. 1097, 1101.

It is also in harmony with the decisions of other courts in the same or similar situations. *Nebraska T. Co. v. State,* 55 Neb. 627, 76 N. W. 171; *Atchison, T. & S. F. R. Co. v. Foster L. Co.* 31 Okla. 661, 122 Pac. 139; *Wickwire S. Co. v. N. Y. C. & H. R. R. Co.* 181 Fed. 316.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to grant the motion to quash and to dismiss the proceedings with costs.

Kerwin and Timlin, JJ., dissent.