COMMONWEALTH TELEPHONE COMPANY, Appellant, vs. CARLEY and others, Respondents.

*January 15—April 5, 1927.*

*Public utilities: Corporation actually operating as utility: Regulation: By railroad commission or by courts: Monopolies: Control.*

1. In determining whether a corporation is a public utility and therefore subject to the control of the railroad commission, the acts of the corporation, and not the authority conferred by its charter, control. p. 467.
2. A farmers' mutual telephone company may be treated as a public utility if it operates as such a utility, notwithstanding its organization as a private corporation and noncompliance with the provisions of the public utility act. p. 467.
3. By the amendment of 1925 (ch. 194, Laws of 1925) the railroad commission was invested with enforcement powers with respect to public utilities to the same extent as it was as to railroads under the statutes of 1921; and if the defendants were in fact operating as public utilities subsequent to the enactment of 1925, their control and regulation vests in the railroad commission. pp. 468, 469.
4. Under the common law a public utility had no right to a monopoly, and the limited monopoly given by statute is not absolute and may be regulated by the railroad commission. p. 470.
5. The jurisdiction of the courts to regulate public utilities is suspended until the railroad commission has acted, that body having been designated by the legislature to exercise such control, and the legislature having exclusive power to determine who shall enforce its declared public policy. pp. 471, 472.

APPEAL from a judgment of the circuit court for Iowa county: S. E. SMALLEY, Circuit Judge. *Reversed, with directions.*

For the appellant there were briefs by *Miller, Mack & Fairchild* of Milwaukee, attorneys, and *Schubring, Ryan, Clarke & Petersen* of Madison, of counsel, and oral argument by *J. G. Hardgrove* of Milwaukee and *Ray W. Clarke.*

For the respondents there was a brief by *Fiedler, Jackson & Boardman* of Mineral Point, and oral argument by *N. S. Boardman.*

DOERFLER, J. This action is brought by the plaintiff, a Wisconsin corporation engaged in furnishing telephone service in the city and town of Dodgeville, in Iowa county, pursuant to an indeterminate permit from the state, for the purpose of enjoining the defendants from operating a telephone exchange, for the reason that the operation of such exchange constitutes a violation of the anti-duplication provisions of sec. 196.50 of the Statutes.

It is conceded that the defendants at no time applied to the railroad commission for a certificate of public convenience and necessity. In defendants' answer it is alleged, among other things, that the action being one in equity, for the purpose of securing injunctive relief, the court had no jurisdiction to entertain the same as an original proposition, and that application for remedial relief should first have been made to the railroad commission, which body, it is argued, was vested with full power and authority to investigate the alleged violation and to direct the institution of proceedings under the statutes for the enforcement of sec. 196.50 of the Statutes.

The anti-duplication statute, sec. 196.50, in its present form, was enacted by the legislature in 1913, and reads as follows:

"No license, permit or franchise shall be granted to any person, copartnership or corporation, to own, operate, man-

age or control any plant or equipment for the conveyance of telephone messages, or for the production, transmission, delivery or furnishing of heat, light, water or power in any municipality, where there is in operation under an indeterminate permit, as provided in sections 196.01 to 197.10, inclusive, a public utility engaged in similar service, without first securing from the commission a declaration, after a public hearing of all parties interested, that public convenience and necessity require such second public utility. This subsection shall not prevent or impose any condition upon the extension of any telephone toll line from any municipality into or through any municipality for the purpose of connecting with any telephone exchange in such municipality or connecting with any other telephone line or system. No public utility already engaged in furnishing telephone service shall *install or extend any telephone exchange* for furnishing *local service* to subscribers *in any municipality* where there is in operation a public utility engaged in *similar service,* without first having served notice, in writing, upon the commission and any other public utility already engaged in furnishing local service to subscribers in such municipality of the installation or extension of such exchange which it proposes to make, or make such installation or extensions if the commission, within twenty days after the service of such notice, shall, upon investigation, find and declare that public convenience and necessity do not require the installation or extensions of such exchange, except that any public utility already engaged in furnishing local service to subscribers within any city or village may extend its exchange within such city or village without the authority of the commission. Any public utility operating any telephone exchange in any city or village shall, on demand, extend its lines to the limits of such city or village for the purposes mentioned and subject to the conditions and requirements prescribed in sections 196.04 and 196.19, subsections (4) and (5)."

It is conceded by both plaintiff and defendants that if the defendants are not public utilities, then the court has no jurisdiction to grant the relief prayed for, and that the railroad commission is not vested with power or authority to interfere in the premises. Defendant companies argue that

they are mere private corporations or organizations, known as farmers' mutual companies, and that they are not engaged, either jointly or severally, in performing services either to or for the public, and consequently are not public utilities. The circuit court entertained the action first for the purpose of determining whether defendants were operating a public utility, and then concluded, upon the evidence in the case, that they were not public utilities, but farmers' mutual companies, and ordered the dismissal of the complaint.

Sec. 196.50 pertains solely to public utilities. Under it, one public utility cannot legally invade the field of another, unless it complies with the requirements of the anti-duplication statute by first obtaining a certificate of public convenience and necessity.

Sec. 196.01 of the Statutes defines the term "public utility," and under this definition the distinguishing and important feature which stamps a business as a public utility consists of the furnishing of those things specifically embraced in the definition, to or for the public. In determining whether a corporation is a public utility and therefore subject to the control of the railroad commission, its acts, and not the authority conferred by its charter, control. *State ex rel. M. O. Danciger & Co. v. Public Service Comm.* 275 Mo. 483, 205 S. W. 36. In *Chippewa Power Co. v. Railroad Comm.* 188 Wis. 246, 205 N. W. 900, it was held that the legislative definition of a public utility was intended to include all corporations that were functioning as a public utility under the guise of a private utility. So that, applying the holding of the *Chippewa Case,* above referred to, to the instant case, we must arrive at the conclusion that the defendants herein may be treated as public utilities, even though they were organized as private corporations, where in fact they operated as public utilities, and notwithstanding the fact that they had not complied with the provisions of

the public utility act, which includes the anti-duplication statute.

Sec. 196.02 of the Statutes vests in the commission "power and jurisdiction to supervise and regulate every public utility in the state and to do all things necessary and convenient in the exercise of such power and jurisdiction." The jurisdiction and powers as thus defined by sec. 196.02 are broad, comprehensive, and all-inclusive, and this jurisdiction and power, from the very language of the statute itself, is not confined to a corporation which has obtained a certificate of public convenience and necessity, but it embraces all corporations which perform services to or for the public with respect to those things which are included in the definition of a public utility above referred to. The anti-duplication statute, sec. 196.50, is included in the chapter entitled "Regulation of Utilities."

From the foregoing it necessarily follows that if the defendants during the period charged in the complaint were in fact operating as public utilities, then their control and regulation vests in the railroad commission. In 1925 the legislature, by ch. 194 of the Laws of 1925, amended sec. 195.48 of the Statutes (formerly sec. 1797—31), so that said section now reads as follows:

"*Inquiry into violations.* The commission shall inquire into any neglect or violation of the laws of this state by any railroad corporation or public utility doing business therein, . . . or by any person operating a railroad or public utility, and shall have the power, and it shall be its duty, to enforce the provisions of sections 195.01 to 195.54, inclusive, *as well as all other laws relating to railroads or public utilities,* and report all violations thereof to the attorney general; upon request of the commission it shall be the duty of the attorney general or the district attorney of the proper county, to aid in any investigation, hearing or trial had under the provisions of sections 195.01 to 195.54, inclusive, and to institute and prosecute all necessary actions or proceedings for the enforcement of sections 195.01 to 195.54, inclusive, *and of*

*all other laws of this state relating to railroads or public
utilities,* and for the punishment of all violations thereof.
*Any forfeiture, fine or other penalty provided in chapters
192 to 196, inclusive,* may be recovered as a forfeiture in a
civil action brought in the name of the state of Wisconsin
in either the superior or circuit court of Dane county, or in
the county that would be the proper place of trial under
section 261.01. . . ."

The section just quoted appeared in the Statutes of 1921
under ch. 87, entitled "Railroads," and in its then form, in
substance read as follows:

"The commission shall inquire into any neglect or viola-
tion of the laws of this state *by any railroad corporation
doing business therein,* . . . and shall have the power, and
it shall be its duty, to enforce the provisions of sections
1797—1 to 1797—38, inclusive, *as well as all other laws
relating to railroads* and report all violations thereof to the
attorney general; upon request of the commission it shall
be the duty of the attorney general . . . to aid in any
investigation, hearing or trial had under the provisions of
sections 1797—1 to 1797—38, inclusive, and to institute
and prosecute all necessary actions or proceedings for the
enforcement of sections 1797—1 to 1797—38, inclusive,
and of all other laws of this state relating to railroads and
for the punishment of all violations thereof. . . ."

The foregoing quotation from the statutes manifests a
marked and important change with respect to the powers
and duties and the jurisdiction of the railroad commission,
and this change consists mainly in broadening and extending
the jurisdiction, powers, and duties of the railroad commis-
sion so as to include not only *railroads,* but all public utili-
ties. So that the railroad commission in 1925 was vested
with enforcement powers with respect to utilities to the
same extent and degree as it was with respect to railroads
under the Statutes of 1921; and by the act of 1925 the
commission was also given power to investigate any viola-
tion of a public utility statute to the extent that it possessed
such powers with respect to railroads under the Statutes of

1921. The amendment thus referred to, therefore, worked a vital change in the utility statutes, in that its powers and jurisdiction became vastly broadened and more inclusive.

The railroad commission is composed of specialists in their field, who are equipped, by reason of their office, their experience, and the nature of their work, with special qualifications to perform the administrative duties devolved upon them by statute. They also possess facilities enhancing their ability to properly perform their work which are not ordinarily possessed by individuals, corporations, or even the courts.

The attention of the court is specifically directed by plaintiff's counsel to the case of *Calumet Service Co. v. Chilton,* 148 Wis. 334, 135 N. W. 131, where the court held that injunctive relief is the proper remedy to prevent interference with franchise rights. That case was decided in 1912, before the enactment of the present anti-duplication statutes, and prior to the enactment of sec. 195.48 of the Statutes of 1925, which largely broadened and extended the powers of the commission and provided for enforcement. The right to regulate and control a public utility exists because such utility affects the public interests. Under the common law a utility had no right to a monopoly, and to the extent that it now possesses such rights in a limited degree it traces such rights to the statute. If the services rendered by a company are of a public nature they come *ipso facto* under the jurisdiction of the commission for administrative purposes. If in the operation of their business they perform services to or for the public in the field of public utilities, they are in law and in fact public utilities, and, at least to the extent that they serve the public, the commission has jurisdiction over them for regulation and control purposes. The right to a limited monopoly is one extended by the public through the legislature, but this right is not absolute. It may be regulated by the commission.

Under statutes similar to our own in the state of Pennsyl-

vania, in the case of *Fogelsville & T. E. Co. v. Pennsylvania P. & L. Co.* 271 Pa. St. 237, 114 Atl. 822, where an action similar to the one here involved was prosecuted, the court said:

"It is exclusively within the legislative power to determine what the policy of the commonwealth shall be or it may designate an agency of the government to determine that policy. Such policy may, in itself, become a matter for judicial determination as contravening a constitutional inhibition or for other cause within judicial cognizance. But the legislature has the power to determine who shall promulgate and enforce its declared public policy, and when an agency of the government is selected or created for that purpose, no other body, judicial, executive, or municipal, can step in, and by decree, order, ordinance, or otherwise actively enforce the policy, or do other acts in relation thereto, except possibly to sustain the legislatively created or designated body. By act of assembly the public service commission was the designated government agency to enforce its declared public policy, whether that policy originated by statute or was created by the commission. It is an arm of the state government, created for the benefit of the people as well as the utilities it in part controls. There has been placed under the regulation, supervision, and control of the commission generally all matters relating to rights, facilities, service, and other correlated matters of a public service company. By this act a complete system in itself is presented to enforce such powers. . . . The powers of control or regulation, or whatever authority the court may, in other days, have possessed over these concerns, are supplanted by the public service commission."

We approve and adopt the logic and the law of this case. See, also, *Felton Light, H. & P. Co. v. Seneca River P. Co.* 123 Misc. 585, 205 N. Y. Supp. 821, Pub. Util. Rep. 1925 B, 450; *State ex rel. Superior v. Duluth St. R. Co.* 153 Wis. 650, 142 N. W. 184; *Frank A. Graham Ice Co. v. C., M. & St. P. R. Co.* 153 Wis. 145, 140 N. W. 1097; *Chippewa Power Co. v. Railroad Comm.* 188 Wis. 246, 205 N. W. 900.

Therefore, if the acts of the defendants have resulted in

damage to the property rights of the plaintiff, inasmuch as such rights are statutory, resort must be had to the statutory tribunal created primarily to afford relief; and where such a statutory tribunal is created by the legislature, the jurisdiction of the courts is suspended until such body has acted, and its jurisdiction for the time being is exclusive.   See the following cases, cited in the brief of counsel for the defendants: *State ex rel. Superior v. Duluth St. R. Co.* 153 Wis. 650, 142 N. W. 184; *Chippewa Power Co. v. Railroad Comm.* 188 Wis. 246, 205 N. W. 900; *Frank A. Graham Ice Co. v. C., M. & St. P. R. Co.* 153 Wis. 145, 140 N. W. 1097; *Campbell v. Milwaukee E. R. & L. Co.* 169 Wis. 171, 170 N. W. 937.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint for lack of jurisdiction, with costs for defendants.