STATE EX REL. CITY BANK & TRUST COMPANY and others, Appellants, vs. MARSHALL & ILSLEY BANK, Respondent.

*May 5—June 3, 1958.*

318

For the appellants there were briefs and oral argument by *A. W. Schutz* of Milwaukee.

For the respondent there was a brief by *Quarles, Herriott & Clemons,* attorneys, and *Maxwell H. Herriott, William K. McKibbage,* and *Churchill, Duback & Churchill* of counsel, and oral argument by *Maxwell H. Herriott* and *William H. Churchill, Jr.,* all of Milwaukee.

WINGERT, J.  The court is of opinion that the demurrer should have been overruled, and that therefore the judgment dismissing the action must be reversed.

1. *Propriety of remedy in quo warranto.* Sec. 294.04 (1) (a), Stats., authorizes an action of *quo warranto* "when any person shall usurp, intrude into, or unlawfully hold or exercise . . . any franchise within this state." In the present action no attack is made upon the defendant's right to exist as a corporation and conduct its banking business at its main office on North Water street. The contention is rather that the operation of the branch in the new location will, *pro tanto,* usurp or unlawfully exercise a franchise; in other words, that the corporation will be unlawfully exercising its banking franchise beyond its terms, and thus usurping the excess. Only this excess operation, over and above what is said to be the limit imposed by statute, is sought to be prevented.

*Quo warranto* is proper in such a case and lies to exclude the defendant from the exercise of its banking business beyond the limit imposed by law. Thus one authorized to maintain a dam at a certain height may be stopped in *quo warranto* from keeping the dam at a higher level. *State ex rel. Attorney General v. Norcross,* 132 Wis. 534, 547–549, 112 N. W. 40. This rule appears to accord with that pre-

vailing in other states. See *Commonwealth ex rel. Woodruff v. American Baseball Club,* 290 Pa. 136, 138 Atl. 497, and Anno. 53 A. L. R. 1038.

2. *Quo warranto vs. scire facias.* Out of abundance of caution plaintiff pleaded causes of action in both *quo warranto* and *scire facias,* having in mind an old common-law distinction according to which *scire facias* was proper where there was a legally existing corporation which had abused its powers, while *quo warranto* was appropriate where there was a body *de facto,* but not *de jure.* Under the present statute, secs. 294.01 to 294.04, Stats., which substitutes a civil action for the old writs, the distinction is no longer important. For convenience we refer to the action as *quo warranto,* and that terminology appears to be in general use, even where the action recognizes *de jure* corporate existence and attacks only abuse of power. See 13 Am. Jur., Corporations, pp. 1181, 1182, sec. 1326.

3. *Action not premature.* Defendant cites *Attorney General v. Superior & St. Croix R. Co.* 93 Wis. 604, 614, 615, 67 N. W. 1138, to the point that *quo warranto* cannot be maintained against a corporation for what it may intend or threaten to do, but lies only to challenge usurpations already committed. The amended complaint does not allege that the defendant is already operating a branch in the new location, but only that it "has now leased premises for the purpose of maintaining a branch office in the Bockl building . . . in lieu of its branch office at 414 W. National avenue." Attached to the complaint as an exhibit is a copy of a newspaper report of an announcement by the defendant that it plans to close its old office on West National avenue and reopen it in the new location with May 1, 1957, as the target date for opening. The present action was commenced March 21, 1957.

We do not consider the action premature. The complaint discloses that the defendant had leased quarters for

the purpose of operating a new branch office, and that it had publicly announced its intention to make the move on a date only a little over a month after the commencement of the action. In such a situation it was not necessary for the relators to wait for the new office to open its doors to the public. The lease of space and the public announcement took the matter out of the category of mere general intention. The process of shifting to a new location was already underway; the matter had become imminent; overt acts had taken place. "Like injunction, *quo warranto* is to a large extent a preventive remedy." 44 Am. Jur., Quo Warranto, p. 98, sec. 17. See *State ex rel. Vilter M. Co. v. Milwaukee, B. & L. G. R. Co.* 116 Wis. 142, 92 N. W. 546, where written acceptance of a franchise to operate a street railroad was held sufficient to warrant *quo warranto* to challenge the right to exercise the franchise, although no steps to build or operate the railroad had been taken.

4. *Action not barred by failure to proceed in the department of banking.* Defendant contends that the commissioner of banks has exclusive jurisdiction of the subject matter of this action, subject to review by the banking review board whose decision is in turn reviewable by the courts under statutory sec. 227.15 of the Administrative Procedure Act; and that relators having failed to avail themselves of the remedies thus afforded them, cannot maintain *quo warranto* under sec. 294.04.

It is true that the banking department "shall have charge of the execution of the laws relating to banks" (sec. 220.01, Stats.), and that the commissioner of banks is vested by law with the duty and authority to "enforce all laws relating to banks" (sec. 220.02 (3)), and "to enforce and carry out all laws relating to banks" (sec. 220.02 (4)), and to "ascertain whether such bank transacts its business at the place designated in the articles of incorporation, and whether its business is conducted in the manner prescribed by law" (sec.

220.04 (2)), and that if a bank violates any provision of ch. 221, Stats., with the knowledge of its directors and after a warning from the commissioner continues such conduct, it may become the duty of the commissioner to institute proceedings to forfeit the charter of the bank and wind up its affairs (sec. 221.41). Thus the commissioner of banks has authority to make an administrative determination as to whether the change in location of defendant's branch office will violate the statute invoked by the relators, and if he considers that the move is prohibited by the statute, to order the bank not to make the move, and to take appropriate action if it persists in doing so.

In the present case, however, the amended complaint alleges that the commissioner of banks was timely requested by one of the relators, on behalf of all of them, to enforce the provisions of sec. 221.04 (1) (f), Stats., against the defendant in respect to the removal of its branch office, but the commissioner declined to take action, being of the considered opinion that the question is for the courts; and it is further alleged that any further demands on him would be futile. This in our opinion was as far as the relators were required to go in seeking relief from the banking department. When the commissioner of banks refused to act, and when the attorney general in his turn declined to commence an action under sec. 294.04 (1), relators were in position to proceed in the name of the state under sec. 294.04 (2).

The commissioner of banks, like any law-enforcing official, has substantial discretion in determining whether or not to take action against suspected violators, particularly where it is doubtful whether the act complained of is a violation of the law. Here the commissioner, being in doubt on that point, exercised discretion and declined to act. His refusal was not directly subject to judicial review under the Administrative Procedure Act. (Sec. 227.15, Stats.)

We do not think relators were obliged to appeal to the banking review board before proceeding in *quo warranto*. That board has jurisdiction "to review the acts and decisions of the commissioner" (sec. 220.035 (2) (a), Stats.), if a petition for review is filed within ten days after "the act, order, or determination to be reviewed" and if such petition shows that petitioner "is aggrieved and directly affected by the act, order, or determination." After hearing, the board, acting on "the record made by the commissioner" which it may supplement by "additional evidence," may affirm, modify, or reverse the action, order, or determination under review.

We have some doubt that appeal to the banking review board from a discretionary refusal of the commissioner of banks to proceed against a bank for alleged violation of a statute is available to a member of the public, even though it be a competitor bank or group of competitors; for it is questionable whether the commissioner's nonaction is an "act, order, or determination" or that the member of the public is *"directly* affected" thereby. The word "directly" is not to be disregarded. However, we need not decide the point, for even if relators could have invoked the reviewing power of the board of banking review, they were not required to do so.

In our opinion sec. 220.035, Stats., should not be construed to exclude recourse to the remedy provided by sec. 294.04, by members of the public who have applied to the commissioner of banks to enforce the law against an alleged violator and whose request has been rejected in a case like the present one.

Here the case stated by the amended complaint appears to involve only a question of law. The statute said to have been violated, sec. 221.04 (1) (f), Stats., provides—

". . . but no bank shall establish more than one office of deposit and discount or establish branch offices, branch

banks, or bank stations, provided that this prohibition shall not apply to any branch office or branch bank established and maintained prior to May 14, 1909, or any bank station established and maintained prior to May 17, 1947, . . ."

The prohibition against branches and bank stations is absolute except as branches or stations "established and maintained" prior to certain dates are exempted. Whether a branch or station loses its exemption upon being moved from its exempt location, as in the case of some other nonconforming uses (*Yorkville v. Fonk,* 3 Wis. (2d) 371, 378, 88 N. W. (2d) 319), or whether the exemption is ambulatory and applies wherever a pre-existing branch or station may be moved, is a question of law. In the solution of this question, such matters as the needs of the neighborhood for banking service, sufficiency of service already available, and relative merit of competing contenders for the right to serve the area are not involved. The banking review board is a lay body composed mainly of bankers, whose expertness in their field gives them no particular advantage over a court in passing on the question of law presented by sec. 221.04 (1) (f), Stats.

In support of the demurrer, defendant relies strongly on *Commonwealth Telephone Co. v. Carley,* 192 Wis. 464, 213 N. W. 469. There this court held premature an action by a telephone company to enjoin the defendants from operating a telephone exchange in plaintiff's community in alleged violation of the antiduplication provision of the Public Utility Law, which prohibited a telephone utility from furnishing local service in any municipality which another telephone utility was already serving, without first having served notice on the railroad (now public service) commission, or if the commission, within twenty days after such notice, should find that public convenience and necessity do not require the new company's service. This court quoted the statute in question and referred to others granting the rail-

road commission broad regulative and enforcement powers over public utilities, and summed up its decision as follows (p. 471):

"Therefore, if the acts of the defendants have resulted in damage to the property rights of the plaintiff, inasmuch as such rights are statutory, resort must be had to the statutory tribunal created primarily to afford relief; and where such a statutory tribunal is created by the legislature, the jurisdiction of the courts is suspended *until such body has acted,* and its jurisdiction *for the time being* is exclusive."

The same general principle has been given effect in a number of other cases.

Assuming the rule of the *Carley Case* to be equally applicable to violations of the banking laws by banks, we think relators did all that was required of them when they requested the commissioner of banks to take steps to prevent the alleged violation of law by the defendant. To paraphrase the *Carley Case,* "resort was had" by relators to the commissioner of banks; the jurisdiction of the courts may have been suspended "until such body (here the commissioner) has acted," and the commissioner's jurisdiction may have been exclusive "for the time being." When the commissioner refused to act, however, the remedy provided by sec. 294.04, Stats., became available.

Our ruling on this point is not to be understood as going beyond the facts of the present case. We repeat that here the complaint appears to present only a question of law as to construction of a statute, of a nature relative to which the technical expertness of the banking review board gives it no special competency not to be found in the courts.

5.   *Merits.*   Since the ground of demurrer which was sustained goes only to the propriety of *quo warranto* as a remedy and to the failure of the plaintiffs to avail themselves of their administrative remedies under the banking laws, the merits of the case, *i.e.,* whether the alleged facts constitute

a violation of sec. 221.04 (1) (f), Stats., are not before us for decision.

*By the Court.*—Judgment reversed, with directions to overrule the demurrer to the amended complaint.

BROADFOOT, J. (*dissenting*). I cannot agree with the decision of the majority of the court that the demurrer to the amended complaint herein should be overruled. The amended complaint merely states that one of the relators, on behalf of others who are unnamed, requested the commissioner of banks to enforce the provisions of sec. 221.04 (1) (f), Stats., and that the commissioner declined to take any action and therefore any attempt to exert further compulsion on him was futile and any further formal demand to that end an idle ceremony.

The statutes charge the commissioner of banks with the enforcement of all laws relating to banks. The rules of the banking department require that requests for action on the part of the commissioner shall be by a petition in writing, duly verified. There is no allegation in the complaint that indicates any attempt to comply with this regulation. Attached to the complaint is a copy of the petition directed to the attorney general. Surely if a proper petition had been filed with the commissioner a copy thereof would have been likewise attached to the complaint. The only inference to be drawn from the complaint is that there was an informal request to the commissioner and an informal answer. The allegation that a formal demand would be an idle ceremony is an unwarranted statement about an efficient and conscientious public official. In my opinion the trial court was clearly correct in sustaining the demurrer.

I am authorized to state that Mr. Chief Justice MARTIN joins in this dissent.