Wisconsin Electric Power Company, Respondent, vs. Town of Lake, Appellant.

*January 16—February 10, 1925.*

*Taxation: Public utilities: Plant leased to operating company: Separate assessments: Necessity: Income taxes: Recovery of illegal tax paid.*

1. Under secs. 71.01, 71.02, and 71.05, Stats., relating to income tax, and secs. 76.01, 76.02, and 76.23, relating to the taxation of public utilities, a light and power company which has leased all of its property to a traction company under an agreement requiring the traction company to pay all taxes is not liable for an income tax based on the proceeds of such lease, the tax paid directly into the state treasury by the lessor company being, under sec. 71.05, in lieu of all other taxes on such property, and it not being required that a separate assessment be made against the owner, or that it must actually be engaged in operating its power plant to be taxed as a public utility.   p. 205.

2. Sec. 74.73, Stats., requiring a person seeking to recover taxes paid to show that he had paid more than his equitable share of taxes, does not preclude a recovery of a tax paid under an illegal levy, it necessarily following from the fact that the tax was illegal that the taxpayer has paid more than his equitable share of taxes.   p. 209.

Appeal from an order of the circuit court for Milwaukee county: W. B. Quinlan, Judge.   *Affirmed.*

This is an appeal by the defendant from an order sustaining the demurrer of the plaintiff to an amended answer. The action was brought to recover the income tax paid under

protest by the plaintiff, which was assessed by the tax commission on the net income of the plaintiff for the year 1921. It appears from the complaint and answer that the plaintiff is a Wisconsin corporation organized with broad powers, including that of manufacturing, generating, and selling electricity for power, light, heat, and other purposes. The Milwaukee Electric Railway & Light Company, hereinafter called the traction company, is a Wisconsin corporation, engaged as a public utility in operating a street railway and also an interurban railway and in generating and selling electric current for power purposes. Prior to October 1, 1920, the plaintiff company owned forty-nine acres of land in the town of *Lake,* with an electric power plant thereon, and on that day leased the same for a term of thirty-six years to the traction company, the rental agreed on being an amount equal to interest at the rate of ten and one-half per centum per annum upon the entire investment of the lessor, plus an additional percentage for replacements, obsolescence, and depreciation. It was agreed that the lessee as additional rent should pay all taxes, assessments, license fees, and other charges, general and special. This provision for the payment of taxes is quite detailed and sweeping in its terms. During the year 1921 the plant owned by the plaintiff constituted a part of the appliances and property connected with and used by the traction company in its business. The plaintiff's power plant was reported for taxation by the traction company pursuant to the utility statutes, and in its report of income to the tax commission the traction company claimed and was allowed as an operating expense the rental paid by it to the plaintiff. The plaintiff made a return to the tax commission, under protest, in April, 1922, of its income for the year 1921. Except for a few dollars, all of its income was the rental received from the traction company. The tax commission computed and assessed an income tax amounting to $25,630.39. Objections were duly

filed before the tax commission, full disclosure was made, and the tax paid under protest. The following are the sections of the income tax law directly involved:

"71.01 *Persons and subjects taxable.* There shall be assessed, levied, collected and paid a tax on all income received in each calendar year beginning with the year 1920, by every person residing within the state and by every non-resident of the state upon such income as is derived from property located or business transacted within the state, except as hereinafter exempted."

"71.02 *Definition of terms; what income taxable.* (1) The term 'person,' as used in this act, shall mean and include every individual, and every corporation, joint-stock company or association organized for profit, and having a capital stock represented by shares, unless otherwise expressly stated."

"(2) The term 'income,' as used in this act, shall include: (a) All rent of real estate. . . . (h) And all other gains, profits, or income of any kind derived from any source whatever except such as hereinafter exempted."

"71.05 *Exemptions.* (1) There shall be exempt from taxation under this chapter income as follows, to wit: . . . (3) Incomes derived from property and privileges by persons now required by law to pay taxes or license fees directly into the treasury of the state in lieu of taxes, and such persons shall continue to pay taxes and license fees as heretofore."

The following sections relate to the assessment and taxation of public utilities:

"76.01 *Annual assessment.* The tax commission shall make an annual assessment of the property of all railroad companies, of all street railway companies and light, heat and power companies operated in connection with street railways, of all telegraph companies, and of all conservation and regulation companies, within this state, for the purpose of levying and collecting taxes thereon, as provided in this chapter."

"76.02 *Definitions.* (5) Any corporation organized under the laws of this state for manufacturing, generating

or furnishing light, heat, power, signals or other service with the power of accepting and operating under franchises granted by municipalities and wholly operated by a street railway company, and operated in connection with the railway property of such company as owner, lessee, or otherwise, shall be deemed a light, heat and power company.

"(6) The word 'company,' without other designation or qualification, shall mean and include any railroad company, any street railway company, any light, heat and power company and any telegraph company, as defined in this section, to which the word is applied."

"(9) Every person or company operating a railroad, or a street railway, or the property of a light, heat and power company, or a line or lines of telegraph in this state, with all appliances and property connected and used therewith in the railroad, street railway, telegraph or light, heat and power service, as the case may be, shall be the representatives of every title and interest in the property so operated and used either as owner, lessee or otherwise, and notice to the operating company shall be notice to all interests in the property for the purposes of taxation. The assessment and taxation of the property of any company in the name of the owner, lessee or operating company shall be deemed and held an assessment and taxation of all the title and interest in such property of every kind or nature."

"76.23 *Exemption from other taxation.* The taxes imposed by this chapter upon the property of the companies defined in section 76.02 shall be in lieu of all other taxes on such property necessarily used in the operation of the business of such companies in this state, except that the same shall be subject to special assessment for local improvements in cities and villages. The taxes so imposed and paid by such companies shall also be in lieu of all taxes on the shares of stock of such companies owned or held by individuals of this state and such shares of stock in the hands of individuals shall be exempt from further taxation."

For the appellant there was a brief by *Herbert J. Piper* of Milwaukee, and a separate brief by *Eugene Wengert,* district attorney of Milwaukee county, and *Daniel W. Sullivan,* first assistant district attorney, of counsel, and oral argument by *Mr. Piper* and *Mr. Sullivan.*

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Paul R. Newcomb,* all of Milwaukee.

JONES, J.   The questions here involved are purely questions of law.   In the very elaborate briefs of counsel many sections of the statutes have been referred to, but in our judgment those quoted in the statement of facts are the crucial ones which are to be construed.

We cannot agree with counsel for the appellant that because the plaintiff has leased its property to the traction company and no longer operates its plant it is a mere landlord and is not subject to taxation as a public utility.   The plaintiff was organized under the laws of the state for, among other objects, generating and manufacturing power, with the power of accepting and operating under franchises granted by municipalities.   It is wholly operated by a street railway company and operated in connection with the railway property of such company as lessee, and by virtue of sub. (5), sec. 76.02, Stats., must be deemed a light, heat, and power company—in other words, a public utility—and as a public utility should be taxed.   The answer admits that the plaintiff's plant was reported by the traction company for taxation pursuant to the statutes as property taxable to the traction company under sec. 76.02, and that during the year 1921 the plant constituted part of the appliances and property connected with and used by the traction company. Unlike individuals and most corporations, street railways are required to pay their taxes not to the local officer, but directly into the state treasury.   Under sec. 71.05, already quoted, incomes derived from property and privileges by persons required to pay taxes or license fees directly into the treasury of the state in lieu of taxes are exempt from taxation under the income-tax statute.   By sub. (9), sec. 76.02, persons or companies operating a street railway, or the property of a power company with the appliances and

property connected and used therewith in such service, are made the representatives of every title and interest in the property so operated and used, either as owner, lessee, or otherwise, and the assessment and taxation of such property in the name of the owner, lessee, or operating company is declared to be an assessment and taxation of all the title and interest in such property of every kind and nature.

It is argued that the plaintiff paid no tax directly into the state treasury and therefore it can claim no exemption from the payment of an income tax under sec. 71.05. The plaintiff's power plant was reported by the traction company, and that company paid the tax on the plaintiff's power plant because it was operated by and in connection with the street railway system. In levying this tax there had to be considered all of the property, franchises, and rights owned by the plaintiff company and held under the lease. This tax was paid by the traction company as the representative of the plaintiff, according to the direction of the statute above referred to. In our opinion, the claim that this was not a payment of taxes directly into the state treasury is rather technical and is contrary to the real meaning of the statute. When the ordinary taxpayer pays taxes into the town or city treasurer, it is a payment directly to a local officer and into the treasury of the city or town, and it is quite immaterial whether he makes the payment in person or through an agent or representative. And when the traction company operating the power company reported and paid into the state treasury the tax assessed against all the property and franchises of both companies, under the provisions of the utility statutes, acting as the representative and lessee of the power company, it was in legal effect a payment by the power company "directly into the treasury of the state." When this language is used exempting from taxation a certain kind of income, it is not used to describe the instrumentality or agency through which taxes are paid, but to make a distinction between cases where taxes are assessed by the tax

commission under the utility statute and those which are assessed by the local authorities.

It is argued by counsel for defendant that under the statute a separate assessment was required to be made against the plaintiff and that the plaintiff must have been engaged in the business of actually operating its power plant in order to be taxed as a public utility. It seems to us impossible to reconcile this theory with former decisions of this court. In *Merrill R. & L. Co. v. Merrill,* 119 Wis. 249, 96 N. W. 686, the plaintiff company owned and operated a street railway. Individuals constructed a power plant on land owned by them and leased the same to the railway company, except four acres, for five years. The company agreed to pay all taxes. For some years the power plant had been used and operated by the street railway company to supply electric power and for lighting purposes. In 1901 the entire tract was placed upon the tax roll and assessed to the individual owners and included in the general tax levy. In the court below the amount of the proper tax on the four acres was stipulated and the rest of the tax was held void. The statute prescribed that street railways should be taxed on their gross revenues in lieu of other taxation and contained a provision to the effect that upon payment of such license fee "all personal property, franchises and real estate owned and actually and necessarily used by such person, company or corporation in the operation of its business shall be exempt from taxation and other license fees." It was contended by the city that the power plant and land were not "owned" by the railway company and therefore were not exempt from the tax levied. After discussion of the subject in the opinion by Mr. Justice DODGE, it was said in reference to the utility statutes:

"It seems to us entirely probable that the legislature intended in a general way to exempt from specific assessment and taxation those things which, in association with each other, help to produce the gross revenue on which the license fee is to be measured. In this view it is difficult to see why

leased property should not fall within the purpose of the exemption as readily as that owned absolutely, while actually used for the purposes of the enterprise. What difference would it make that this power plant had been purchased? Such fact would neither enhance nor diminish the gross earnings of the entire plant, nor the contribution thereto of this particular property. Why should the legislators care whether the dynamos in the power house or the motors on the cars were owned or leased? In either case they contribute equally to produce the revenue on which the license fee is graded."

It is argued that this decision was before the income-tax law was passed and has little bearing on the question here involved. That it was so enacted is true. But the income-tax statutes have in no sense repealed the statutes regulating public utilities and the mode or plan of their taxation. The public utility statute was enacted after long discussion and deliberation with the hope that, by extending the control of the state over certain classes of corporations, many discriminations and abuses would be prevented. One very important object was to secure state control over rates charged for their service by the corporations affected by the act. It was realized that, since taxation is one of the elements in the cost of service and production, taxation and rates are closely associated. It was by no means the purpose to exempt corporations like street railways and power plants from taxation, or to grant them special privileges. But it was the idea that the taxation of such companies as entireties, in the manner adopted, would lead to greater uniformity and to results fair alike to the companies and the public. As stated in the opinion already referred to, "The purpose of this whole scheme was to measure the contribution of street railways to the public revenues by the earning capacity of their plants as entireties, recognizing that such plants include many elements which are peculiarly intangible and difficult of valuation by ordinary methods, such as the franchises to do business; the privileges to use highways and public grounds; the questionable title to the structures affixed to

such realty and consequent difficulty of valuation specifically; the uncertainty, if not absence, of sale value of each element of the plant, except as used in connection with every other part and in connection with the special franchises and privileges." *Merrill R. & L. Co. v. Merrill,* 119 Wis. 249, 96 N. W. 686.

Another important case illustrating the policy of the state in respect to the taxation of public utilities and decided since the passage of the income-tax statute is *Superior v. Allouez Bay Dock Co.* 166 Wis. 76, 164 N. W. 362. In that case the defendant owned a large dock used in the transfer of ore between the Great Northern Railroad Company and the boats. The defendant leased its property for ninety-nine years to the railroad company, together with a track system and locomotives owned by it, and agreed to render service at an agreed price. The docks were used as part of the railroad system and as a terminal. In 1912 an income tax of more than $100,000 was assessed against the dock company. The claim of that company was that for the purposes of taxation it was in legal effect a railroad company and hence not subject to taxation. The opinion was by Mr. Chief Justice WINSLOW. After quoting one of the sections of the statutes now being considered (sub. (1), (3), sec. 71.05), it was said:

"Railroad companies are required by law to pay taxes directly into the state treasury, and the defendant claims and the trial court held that it was to be considered a railroad company for the purposes of taxation and hence not subject to income taxation. We can see no escape from the argument. The law governing the taxation of public utilities provides (sub. (2), sec. 51.02, Stats.) that 'Any person . . . or corporation owning and operating a railroad, . . . or owning or operating any station, depot, track, terminal, or bridge, in this state, for railroad purposes . . . shall be deemed a railroad company.'

"The ore dock under consideration here was unquestionably a terminal within the meaning of that section. *Minneapolis, St. P. & S. S. M. R. Co. v. Douglas Co.* 159 Wis. 408, 150 N. W. 422. It was used exclusively as a railroad

terminal and hence should have been assessed and taxed as a railroad. It is said that it cannot be so taxed because the defendant corporation was not a railroad corporation, but a corporation organized for dock and warehousing purposes, and hence that it would be violating the law if it attempted to do a railroad business. The argument is fallacious. When a railroad operates a terminal itself, or when a terminal is owned by a third person or corporation and operated solely as a terminal for the railroad, it is as truly a part of the railroad as its trains, and its business as truly a part of the railroad business as the operation of the trains. No reason is perceived why, for the purposes of taxation, such property should not be classified as railroad property and subjected to the same methods of taxation."

It is our view that in accordance with the principle declared in this case and the *Merrill Case* the plaintiff and the traction company should be taxed as an entirety; that it is immaterial that the traction company, while operating the power plant in connection with the railway, is doing so as lessee and not as owner, and that neither company could be properly assessed for an income tax.

Counsel for the appellant argue that the sections in the utility act above referred to, which provide that the taxes paid thereunder shall be in lieu of all other taxes, and that the persons operating properties of this class as lessee shall be the representatives of every title and interest in the property, cannot be construed to relieve the plaintiff from payment of an income tax but only from a property tax. Counsel for the plaintiff do not rely on these statutes as exempting it from the payment of an income tax, except so far as they show a legislative intent to exempt from all other forms of taxation the corporations which pay a tax on their property pursuant to that chapter of the statutes. But they do rely on sec. 71.05, which specifically exempts from the income tax the income from property of corporations which pay a tax directly into the treasury of the state on such property. No claim is made that public utilities are required to pay in-

Wisconsin Electric Power Co. v. Lake, 186 Wis. 199.

come taxes. It may be assumed that under the supervision of the Wisconsin tax commission, under the existing system, they are required to pay their due proportion. No criticism is made by the appellant of the lease between the plaintiff and the traction company. By the terms of that lease the latter company is bound to pay all taxes legally assessed against the plaintiff, including income taxes, if any. If the traction company were compelled to pay the tax assessed against the plaintiff, it would be forced to pay indirectly a double tax—a tax not authorized by the statutes.

It is contended by the appellant that the tax assessed is no more than is equitable and that under sec. 74.73 no recovery can be had. That statute provides that in case of an action of this kind it is essential for the plaintiff to prove that he has paid more than his equitable share of taxes. The claim of the plaintiff is not merely that the amount of the tax is excessive or that the procedure has been irregular, but that the entire levy was illegal. The objection goes to the groundwork of the tax. It is elementary that taxes must be based upon legislative action.

In view of our conclusion that this tax was collected without any legal authority and after there had been paid, in the manner indicated, the full amount of any tax legally assessable, it necessarily follows that the plaintiff has paid more than its equitable share of taxes. *Day v. Pelican,* 94 Wis. 503, 69 N. W. 368; *Wells v. Western P. & S. Co.* 96 Wis. 116, 70 N. W. 1071.

We have not entered into detailed discussion of all the arguments in the very able briefs of the respective counsel concerning the construction of the statutes referred to. Such discussion might be extended almost indefinitely. It is our conclusion, following the decisions in the cases from which we have quoted, that the order should be affirmed.

*By the Court.*—Order affirmed.