CHIPPEWA POWER COMPANY, Respondent, vs. RAILROAD COMMISSION OF WISCONSIN and others, Appellants.

*October 24—November 17, 1925.*

*Public utilities: Regulation by administrative agencies: Powers of railroad commission: Jurisdiction: What constitutes public utility: Corporation leasing its property to utility: Unauthorized proceeding by commission: Remedy by injunction.*

1. The statute creating the state railroad commission and defining its powers, duties, and obligations, and particularly sec. 196.01, must receive a construction that will effectuate the evident intent of the legislature to secure the best service practicable from public utilities at a reasonable cost to the consumer. p. 252.

2. Governmental agencies such as the interstate commerce commission and the railroad commission, with administrative powers to determine facts, which become operative when so found, possess neither judicial nor legislative functions; nor are they invested with any power whatsoever concerning public utilities except such as touches the public interests. p. 252.

3. The legislature cannot arbitrarily or autocratically declare a corporation a public utility which in fact inherently is not so. p. 253.

4. The railroad commission being a tribunal of purely statutory creation, its powers and jurisdiction must be found within the four corners of the statute creating it. p. 254.

5. A corporation not a public utility under ch. 172, Laws of 1903, which at no time furnished light, heat, or power to any one, but simply leased its property and equipment to a public utility for that purpose, is not a public utility within the meaning of sec. 196.01, Stats., and hence the commission was without jurisdiction to regulate or control the terms of a lease or to confirm or refuse to confirm a rental which the public utility agreed under the lease to pay to its lessor. p. 254.

6. The plaintiff corporation not being a public utility, the jurisdiction of the commission over it was confined to rates, tolls, or charges that the public was required to pay for the service; and if the actual charge for rental was unreasonable, the commission, in a proper case involving the public utility alone, could allow only such charge therefor as it deemed reasonable, and might in fixing rates take into consideration the amount for which the utility might obtain service from other sources and fix such an amount as the reasonable amount upon which to determine the actual rates to be charged the public. p. 255.

7. If the railroad commission has jurisdiction of a proceeding to determine the reasonableness of a proposed lease by the plaintiff, the statutes afford an ample remedy by way of review and appeal, but where it has no jurisdiction a different situation is presented; and in this case the only remedy is *held* to be by way of injunction. p. 259.

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

The appeal is from an order overruling the demurrer to plaintiff's complaint.

The complaint, among other things, alleges that plaintiff is a corporation organized "to acquire, own, develop, operate, manage, control, lease or sell developed and undeveloped water-power sites on the Chippewa river and its tributaries;" that it is not by its articles of organization authorized to be a public utility; that it is the assignee of certain rights granted to individuals by ch. 172 of the Laws of Wisconsin for the year 1903 to construct and maintain a dam across the Chippewa river at a point commonly known as Jim Falls, together with necessary structures, appendages, and improvements, and that pursuant to such authority it did

heretofore construct said dam, and also an electric transmission line to a point on said Chippewa river known as Wissota, at which point there existed and still exists a dam constructed and owned by the Wisconsin-Minnesota Light & Power Company, a Wisconsin public utility corporation; that prior to the construction of said dam and transmission line the plaintiff entered into an agreement with the said Light & Power Company by the terms of which plaintiff leased said dam to be constructed, and the machinery to be installed and used in connection therewith, together with said transmission line, to said Light & Power Company, for a term of thirty years, at an agreed annual cash rental, with an option to the lessee to purchase the leased property at a fixed price; that the lessee took possession of said property under the lease, and is now operating the same for the purpose of developing hydraulic energy for the use of the lessee in the distribution of light and power to the public; that the income from said lease is plaintiff's sole income, and that such income is used to pay the interest on certain mortgage bonds executed by it, interest on certain preferred stock, and a reasonable return to the holders of the common stock; that subsequent to the construction of said dam and transmission line and to the issuance of the bonds and stocks above referred to, the defendants, in disregard of the rights of the plaintiff, purporting to be acting under authority of law, issued a notice of investigation for the purpose of determining whether or not the terms of said lease and the rental reserved therein are reasonable; that the plaintiff appeared at such meeting and objected to the jurisdiction of the defendants to approve or disapprove said lease and to make any order in such proceeding as to the reasonableness of said rental, or any order whatever respecting the plaintiff; that notwithstanding the objections so raised by the plaintiff at said hearing the defendants proceeded in their investigation; that it is the object of the defendants to make a finding that the rental provided for

by the lease is grossly excessive and that it should be re-
duced by a large sum; that such proceeding on the part of
the *Commission,* unless restrained, will work irreparable
injury to the plaintiff, and that it will subject the latter to
the trouble and large expense of litigation; that it will
impair the value of its property and the securities issued by
it; and that unless the injunction issue it will be subjected
to the payment of penalties and forfeitures, etc.

The defendants demurred on three grounds, but on the
hearing in the court below, and on this appeal, but one
ground was argued, namely, that the complaint does not
state facts sufficient to constitute a cause of action. This
demurrer was overruled by the circuit court, and from the
order overruling such demurrer the defendants have taken
this appeal.

For the appellants there was a brief by the *Attorney
General* and *C. A. Erikson,* deputy attorney general, and
oral argument by *Mr. Erikson.*

For the respondent there was a brief by *Schubring, Ryan,
Clarke & Petersen* of Madison, attorneys, and *Roger Ernst*
of Boston, of counsel, and oral argument by *William Ryan,
E. J. B. Schubring,* and *Ray W. Clarke.*

DOERFLER, J.    At the very threshold of the issues raised
in this case lies the question whether the plaintiff is a public
utility, so as to empower the defendants to act in the prem-
ises with respect to the terms and conditions of the lease,
as far as the plaintiff is concerned. This issue therefore re-
solves itself into one of jurisdiction. The material por-
tion of sec. 196.01 of the Statutes reads as follows:

"The term 'public utility' as used in sections 196.01 to
197.10, inclusive, shall .mean and embrace every corpora-
tion, company, individual, association of individuals, their
lessees, trustees, or receivers appointed by any court what-
soever, and every town, village, or city that now or hereafter
may own, operate, manage, or control any plant or equip-
ment or any part of a plant or equipment within the state,

for the conveyance of telephone messages or for the production, transmission, delivery, or furnishing of heat, light, water, or power either directly or indirectly to or for the public. . . ."

Defendants in their brief say: "The statute is so clear and unambiguous that it seems almost unnecessary to cite authority in support of the appellants' position." It must be conceded that the language used in this statute is exceedingly broad and comprehensive, as was said in the case of *Calumet Service Co. v. Chilton,* 148 Wis. 334, 135 N. W. 131, and that such language, when given a literal interpretation, may be held to be sufficiently broad and comprehensive to include a corporation like the plaintiff, under the facts and circumstances appearing from the complaint. While it must be and is admitted by defendants' counsel that the plaintiff is not *directly* engaged in furnishing light, heat, or power to the public, nevertheless they contend that it is clearly engaged in *indirectly* furnishing light, heat, and power to the public, and that, being the owner of the property leased to the Light & Power Company (a conceded public utility), it clearly comes within the purview of the statute referred to. It is also conceded by defendants that if the plaintiff had devoted its property to some manufacturing or some other private use it could not be deemed a public utility and would not be subject to regulation by the defendants.

It is quite evident that the legislature, in the use of the word "indirectly" in the statute, did not intend to cover a situation such as is presented in this case, but that it aimed at including all corporations under the definition of a public utility which, under the guise of a private utility, nevertheless in fact were functioning as a public utility. The plaintiff, while the owner of the property and of the plant, has parted with its possession of the same to the lessee, under the lease. As long as the lessee performs the covenants and conditions of the lease, it is, to all intents and purposes, the owner of such plant for a period of thirty years. The

plaintiff produces no light, heat, or power for either the public or an individual, and at no time has done so. It sells no light, heat, or power to any one. It is not interested, directly or indirectly, in the sale of any light, heat, or power to the public, that being a matter in which the Light & Power Company alone is interested. It is not authorized under its articles of incorporation as a public utility, and, as assignee of the rights originally granted certain individuals by ch. 172 of the Laws of Wisconsin for the year 1903, it obtained no such rights and assumed none, as these individuals were merely authorized to maintain a dam across the Chippewa river for the purpose of milling, manufacturing, and for hydraulic purposes.

What basis is there, then, for claiming that the plaintiff is a public utility? If the plaintiff, under the facts in this case, be deemed a public utility, then the definition of a public utility has been broadened to an extent heretofore undreamed of. An owner of an office building who leases the whole or a part thereof to a public utility would thereby be embraced within the definition of a public utility, and his lease would be subjected to regulation of the *Railroad Commission*. The owners of patented devices leased to telephone companies would also come within the definition of the term "public utility," and their leases, which are purely private contracts, would be subjected to regulation by the *Commission*. Other illustrations could be readily furnished, but the foregoing, which are among those specified and set forth in the brief of the learned counsel for the plaintiff, are sufficient to demonstrate the general drift of where we would ultimately land if the facts in this case were deemed sufficient to warrant our holding that the plaintiff is a public utility. A line or distinction must definitely be drawn somewhere, and, unless this be done, the constitutional provisions pertaining to the ownership, control, and management of private property will be completely submerged. Such a doctrine would be revolutionary, to say the least.

The chapter of our statutes creating the *Railroad Commission* and defining its powers, duties, and obligations, and particularly sec. 196.01 of the Statutes, "must receive a construction that will effectuate the evident intent of the legislature," as was held in the case of *Cawker v. Meyer,* 147 Wis. 320, 324, 133 N. W. 157, and the predominant and evident intent was to secure "the best service practicable at reasonable cost to consumers in all cases." *Calumet Service Co. v. Chilton,* 148 Wis. 334, 363, 135 N. W. 131.

Originally, corporations which were in fact public-service corporations contended that they were not subject to control as to the service which they gave the public or the rates which they charged. However, valuable privileges had been extended to them by the public. Railroad corporations, street railway lines, telegraph and telephone companies were given powers not granted to purely private corporations. They were authorized to use the public highways, and they were granted a right which the public only possessed, and which could be exercised only in the interests of the public, namely, the right of eminent domain; and Congress and the legislatures of the various states assumed control over corporations which were in fact public utilities and regulated their service and their rates. Fundamentally, it was realized that officers and directors of such corporations could not consistently serve two masters. As is said in Luke 16: 13: "No man can serve two masters, for either he will hate the one, and love the other; or else he will hold to the one, and despise the other. Ye cannot serve God and Mammon."

In the course of time it was demonstrated that this mode of regulation and control was impracticable, and in its place public bodies like the interstate commerce commission and railroad commissions were created as governmental agencies, with administrative powers to determine certain facts, which facts became operative when so found, pursuant to a standard lawfully created by the law-making bodies. But it must always be borne clearly in mind that these agencies pos-

sessed neither judicial nor legislative functions, nor could they under our constitutions be invested with any such powers; nor were they invested with any power whatsoever as far as public utilities are concerned, excepting such as touched the public interests. This thought is at the very foundation of public regulation and public control, and must serve as a perpetual warning that "thus far shalt thou go, but no farther." The line has thus been definitely drawn and the limitations firmly and definitely fixed.

It is appropriate here to quote from the decision of the supreme court of the United States in the case of *Charles Wolff P. Co. v. Court of Industrial Relations,* 262 U. S. 522, 43 Sup. Ct. 630, where that court considered on appeal a statute of the state of Kansas which declared a number of callings to be affected with a public interest. The supreme court in its opinion said:

"The mere declaration by a legislature that a business is affected with a public interest is not conclusive of the question whether its attempted regulation on that ground is justified. The circumstances of its alleged change from the status of a private business and its freedom from regulation into one in which the public have come to have an interest are always a subject of judicial inquiry. . . . It is not a matter of legislative discretion solely. It depends on the nature of the business, on the feature which touches the public, and on the abuses reasonably to be feared. To say that a business is clothed with a public interest is not to import that the public may take over its entire management and run it at the expense of the owner. . . . If, as, in effect, contended by counsel for the state, the common callings are clothed with a public interest by a mere legislative declaration, which necessarily authorizes full and comprehensive regulation within legislative discretion, there must be a revolution in the relation of government to general business."

A legislature cannot arbitrarily or autocratically declare a corporation a public utility which in fact inherently is not a public utility, and when it attempts so to do it contravenes the provisions of the fundamental law of the land.

The *Railroad Commission* being a tribunal of purely statutory creation, its power and jurisdiction must be found within the four corners of the statute creating it. *Monroe v. Railroad Comm.* 170 Wis. 180, 174 N. W. 450; *Madison Rys. Co. v. Railroad Comm.* 184 Wis. 164, 198 N. W. 278; *Eau Claire v. Wisconsin-Minnesota L. & P. Co.* 178 Wis. 207, 189 N. W. 476. There is neither express power granted in these statutes to the *Commission* to do the things herein complained of, nor can such power be said to exist from the language used in the statute from which it must be inferred by necessary implication that such power has been granted.

In the following cases cited in the brief of plaintiff it was held that corporations under statutes somewhat similar to our own which had furnished light, heat, or power to a public utility corporation under contracts were not public utilities and were not subject to regulation: *Comm. ex rel. Page M. Co. v. Shenandoah R., L. & P. Corp.* 135 Va. 47, 115 S. E. 695; *Avery v. Vermont E. Co.* 75 Vt. 235, 54 Atl. 179; *State ex rel. Public Service Comm. v. Spokane & I. E. R. Co.* 89 Wash. 599, 154 Pac. 1110; *Nowata County Gas Co. v. Henry Oil Co.* 269 Fed. 742. These cases extend the doctrine of immunity from regulation to an extent beyond what it is necessary to consider in the instant case, for concededly in the case before us the plaintiff at no time had furnished light, heat, or power to any one, nor was it furnishing the same to the public utility. It simply leased its property and equipment. So that we conclude that the plaintiff is not a public utility and therefore does not come under the jurisdiction of the *Railroad Commission;* and that the *Commission* had no power, as far as the plaintiff is concerned, to take any action or proceedings which had a tendency in any way to regulate or control the terms or conditions of the lease in question; nor had it power to confirm or refuse to confirm the rental which the public utility agreed under the lease to pay to the plaintiff as lessor.

The conclusion thus arrived at substantially disposes of the principal contention made by the defendants on this appeal.

In the opinion in the matter of the application of the *Wisconsin T., L., H. & P. Co. v. Green Bay & M. C. Co.,* *ante,* p. 54, 205 N. W. 551, handed down at the October, 1925, assignment of this court, this court held that the canal company was in fact a public utility; and while this case was not cited by either counsel in their briefs, there is nothing contained in the opinion which in any way conflicts with the views herein expressed and entertained.

The defendants herein further contend that the rentals reserved in the lease constitute a rate, toll, or charge within the meaning of the public utility law. As is stated by the learned trial judge in his opinion, the *Commission's* powers are confined to those rates, tolls, or charges that the public must pay for service. In fixing rates which the public must pay, the action of the *Commission* is not precluded by the amount of the rentals which the utility pays for the property which it leases. The rental actually charged can only form the basis for rate making, where such amount is determined as reasonable by the *Commission;* and if such rental be exorbitant, it becomes the duty of the *Commission* to allow for that purpose only such amount as it may deem reasonable. In *Waukesha G. & E. Co. v. Railroad Comm.* 181 Wis. 281, 194 N. W. 846, it is said in the opinion:

"A rate which does not permit the utility to earn a reasonable return upon the present fair value of the property at the time it is being used for the public is confiscatory, and therefore, from a judicial standpoint, unreasonable, while from the legislative standpoint a rate may be reasonable which is not unfair to the consumer, although it may permit the utility to earn a return much beyond the legal rate of interest on the money invested."

This clearly demonstrates that the public is primarily and solely interested in a reasonable rate, which it is the duty of the *Commission* to ascertain and fix; but where the rate

is such that it does not permit a reasonable return upon the present fair value of the property at the time it is being used for the public, it is confiscatory from a judicial standpoint; but when the interests of the public have been fully satisfied and a reasonable rate fixed as to it, the rate nevertheless may be reasonable, although it may permit the utility to earn a return beyond the legal rate of interest on the money invested. So that in fixing rates, in every instance the *Commission* must determine the reasonableness of the charges which enter into the subject of rate making, and it can allow or disallow charges in accordance with its findings. Applying the doctrine as so laid down in the *Waukesha Case,* if the actual charge for rental be unreasonable, the *Commission,* in a proper case which involves the public utility alone, can allow only such charge therefor as it deems reasonable. It can also, in fixing rates, take into consideration the amount for which the utility can obtain light, heat, and power from other sources, and fix such an amount as the reasonable amount upon which to determine the actual rates to be charged to the public.

But it is argued by the learned attorney general that the rentals herein involved, which the public utility under the lease is obliged to pay, may seriously jeopardize the stability of the utility to such an extent as to prevent it from carrying out its obligations to the public; in other words, that an exorbitant rental may result in the bankruptcy of the utility, and thus deprive the public either of service altogether or of adequate service. There is great force in this argument. As already indicated, a public utility in the performance of its functions has a dual aspect. The interests of the public are guarded by the *Commission.* The interests of the stockholders are primarily represented by the officers and directors of the corporation. Notwithstanding the regulation involved in the public utility act, the company itself is a concern not organized for public but for private profit, which means the profits of the stockholders. It has been

Chippewa Power Co. v. Railroad Comm. 188 Wis. 246.

the experience with all such corporations that as a rule the interests of the stockholders are adequately protected and represented by the officers and directors. In fact, where there is a failure to perform such functions, or where their interests are ignored, the stockholders have an ample remedy. • The trouble that has quite universally arisen does not consist of a failure or neglect to represent the interests of the stockholders, but an effort on the part of these officers and directors to infringe upon the rights of 'the public. If the amount of the rental is unreasonable and exorbitant, the principal burden rests upon the stockholders; and in order to make good on or save their holdings, it would be incumbent upon them to see that their interests are properly represented, or otherwise suffer the consequences.

In the case of *Citizens P. R. Co. v. Public Service Comm.* 271 Pa. St. 39, 114 Atl. 642, the court uses this significant language:

"The company is entitled to receive a reasonable return for the service it furnishes, and no more; the public is entitled to receive an adequate return for the reasonable rates it pays, and no more. Beyond making sure of these two things, the statute does not vest a greater power in the commission, so far as the matter under consideration is concerned. It has ample authority to see that its orders as to service and facilities are fully complied with. . . . If the effect of so doing is that the latter's stockholders receive no return on their investment, because of the necessity for compliance with the terms of the leases, this concerns them alone, and not complainants or the public. Moreover, if the statute gives to the commission the power to reduce these rentals, it may also increase them, a conclusion which would be a great surprise to everybody, and against which, if decreed, these intervenors would be among the first to complain. As the matter now is, the law gives neither right, and hence the commission should have at once halted this attempt to induce it to exceed its powers."

Such, in substance, is also the holding in *New Street B. Co. v. Public Service Comm.* 271 Pa. St. 19, 114 Atl. 378.

There is no escape from the logic of the *Citizens P. R. Co. Case* that we are able to ascertain. Financial calamities may overtake any corporation, not excepting a public utility corporation; but it is the common observation of all who have made a study of the origin and growth of these corporations that from the standpoint of both the public and of the private stockholders no scheme or system has yet been devised which is promotive of better results both to the stockholders and the public than that which has resulted from the various public utility acts throughout the country. The value of properties has been stabilized and fixed. This can likewise be said of the securities which they issue; and upon the whole, by reason of the confidence of the public in these acts, the investment of capital in the stocks of these companies and in the securities offered by them has become one of the principal sources for reasonably safe investment.

The defendants also contend that the *Commission* is authorized to make an investigation on its own accord, and it must be assumed that any action contemplated by the *Commission* will be lawful, and that such action will not be an infringement on the legal rights of the plaintiff. We are governed in this behalf entirely by the allegations in the complaint, and these allegations, upon a general demurrer, must be taken as true. The complaint alleges an attempt on the part of the *Commission* to control the rentals in the lease, or to approve or disapprove of the lease and the terms and conditions thereof. This, as has already been shown, it cannot do.

Finally, it is claimed by the defendants that injunction is not the proper remedy. The complaint alleges an attempt on the part of the defendants to interfere with the provisions of the lease; to fix a reasonable rental as far as the plaintiff is concerned; to approve or disapprove the lease; that the *Commission* has no jurisdiction or power in the premises; that the result of such action and contemplated action on the part of the *Commission* will have a tendency

to greatly reduce the value of the plaintiff's property; that these rentals constitute its sole income; that the agreement for lease was entered into before the construction of the plant and the building of the power line; that it is contemplated to use such rentals for the purpose of paying the interest on its bonds and its preferred stock, and a reasonable return to the stockholders on their investment; that if the *Commission* continues with its proceedings and does those things which the plaintiff complains of, plaintiff will suffer great damages and irreparable loss; that it will also, unless restrained by the court, be subjected to forfeiture and penalties provided for by the statute. It is true that if the *Commission* has jurisdiction of the matters complained of, then the statutes afford an ample remedy by way of review and appeal, and the cases cited by the learned attorney general fully sustain his position. But where the *Commission* has no jurisdiction or power, there a different situation is presented, and the only adequate remedy that we can perceive is by way of injunction. *Joseph Schlitz B. Co. v. Superior,* 117 Wis. 297, 93 N. W. 1120; *Cawker v. Meyer,* 147 Wis. 320, 133 N. W. 157.

*By the Court.*—The order of the circuit court is affirmed.