FRED A. RISSER, President State Senate
You have requested my opinion as to whether a holding company formed by a public utility corporation would itself be a "public utility" within the meaning of sec. 196.01(1) Stats., and thus subject to the regulatory jurisdiction of the Public Service Commission (Commission).
You indicate in your request that a public utility corporation has formulated a plan to create a holding company corporation. One element of the plan is an exchange of stock through which the newly formed holding company would acquire all common stock of the public utility corporation while each current shareholder would receive an equivalent number of shares in the holding company corporation. I understand that this plan is founded upon the assertion that the proposed holding company would be beyond the regulatory jurisdiction of the Commission and would therefore be able to engage in non-utility business ventures entirely free of regulatory control. You do not indicate in your request the degree to which the existing public utility corporation and the new holding company would share directors, officers, equipment, facilities, personnel. information and other resources.
There appear to be two legal bases upon which the Commission could conclude that such a holding company would be a "public utility" within the meaning of sec. 196.01(1) Stats. The Commission could properly regard the holding company to be a "public utility" within the meaning of sec. 196.01(1), Stats., if it determined that the holding company held the power to exercise direct or indirect control *Page 148 
over the plant or equipment of the public utility corporation. Alternatively, the proposed holding company could be considered an instrumentality to enable the public utility corporation to evade regulatory jurisdiction and, for that reason, the Commission could properly disregard the separate corporate identity of the holding company and simply treat it as one component of an existing public utility.
The fundamental purpose of the Commission's regulatory jurisdiction is the protection of the consuming public. Wis.Environmental Decade v. Public Service Comm., 81 Wis.2d 344,260 N.W.2d 712 (1978). In furtherance of that purpose, the Wisconsin Legislature has conferred comprehensive authority upon the Commission to protect the public's interest in utility service. Every "public utility" is subject to the jurisdiction of the Commission and that term is broadly defined to include,
 [E]very corporation, company, individual, association, their lessees . . . that may own, operate, manage or control . . . any plant or equipment or any part of a plant or equipment, within the state, . . . for the production, transmission, delivery or furnishing of heat, light, water or power either directly or indirectly to or for the public.
Sec. 196.01(1), Stats. The Wisconsin Supreme Court has characterized this definition as,
 [P]lainly designed to cover every conceivable situation of the existence of an industry of the nature mentioned. No room was left for controversies over technical ownership or capacity to own. The purpose was to encompass the physical situation, — to deal with the condition whatever it might be, and the person, natural or artificial, whatever might be the particular relation of the person, or persons, natural or artificial, to the physical situation or condition, whether that of owner, operator, manager or controller, and give thereto the status of a public utility.
Calumet Service Co. v. Chilton, 148 Wis. 334, 348, 135 N.W. 131
(1912). Thus, the question of whether any particular corporation is a "public utility" is primarily a factual question for the Commission, one which must focus upon the relationship of the corporation to the plant and equipment, and its power to control the use of that plant and equipment. Commonwealth Telephone Co.v. Carley, 192 Wis. 464, *Page 149 213 N.W. 469 (1927): see also Rochester TelephoneCorporation v. United States, 307 U.S. 125, 145 (1939).
Essentially, the Legislature has authorized the Commission to assert regulatory jurisdiction over any corporation which actually possesses power over plant or equipment that is used to provide utility service. There must, however, actually be some potential for control, albeit limited or indirect, before a corporation may be determined to be a "public utility." Normally, ownership of utility property carries with it the power to control the use of that property, but where that is not so, as where the technical owner cannot exercise even indirect control over the utility plant, the Commission cannot ignore that reality. In Chippewa Power Co. Railroad Comm., 188 Wis. 246,205 N.W. 900 (1925), the supreme court considered an arrangement whereby the owner of a hydroelectric plant leased that facility for a thirty-year term at a fixed annual cash rental. The court described the arrangement as one in which the owner, in effect, had conveyed the property to the corporation which actually was operating as a public utility and held that because the owner could not be involved in the use of the plant or the sale of electric power it therefore was not a public utility. The court has also ruled, however, that the power to exert control indirectly, together with a financial stake in the operation of utility property, is a sufficient factual basis to declare a corporation to be a "public utility." In Wisconsin Traction, L.,H. P. Co. v. G. B. M. C. Co., 188 Wis. 54, 205 N.W. 551
(1925), the court considered an agreement whereby a corporation which owned a hydroelectric plant leased it for operation by a municipality. The lease reserved to the plant owner the right to require dismissal of any unsatisfactory city employe and the rental amount was based upon the volume of power sold to the public as well as the rates charged. The agreement also provided for cancellation upon two years notice should the corporate owner itself undertake full public utility operations. Nothing inWisconsin Traction suggests that the owner of the leased utility plant actually had sought dismissal of any municipal employe or had attempted to cancel the lease upon notice. The power retained by the owner was both limited and unexercised. That degree of indirect control over the operation of the utility plant was, nevertheless, held to b sufficient as an alternative basis to determine the owner to be a "public utility" within the meaning of sec. 196.01(1), Stats. Wisconsin Traction, 188 Wis. at 66. *Page 150 
The court in Chippewa Power observed that the corporate owner-lessor did not actually operate any utility equipment nor did it have any financial stake in the sale of utility service to anyone. Chippewa Power, 188 Wis. at 250-51. That observation was not intended, however, to limit the definition of "public utility" to those entities which did in fact operate facilities and sell power. The court had decided only one month before inWisconsin Traction that a lessor-owner which retained only very limited and unexercised power to control the use of utility property was a "public utility." The Chippewa Power decision declared simply that where the owner held absolutely no power to control the operation of the leased plant, technical ownership alone would not bring the owner within the definition of "public utility." That decision did not modify the expansive definition of "public utility" adopted in Wisconsin Traction and indeed the court expressly cautioned against such a misreading of its later decision. Chippewa Power, 188 Wis. at 255.
The proposed holding company will own all common stock of a public utility corporation. It is a fundamental concept of corporation law that one corporation may so dominate another that the controlled corporation has in reality no independent existence, so that it is appropriate to regard the two as a single legal entity. 1 W. Fletcher, Cyclopedia of the Law ofPrivate Corporations at 209, sec. 43 (ed. 1974); United States v.Reading Co., 253 U.S. 26 (1920); Chicago, M. St P. R. Co. v.Minneapolis C. C. Asso., 247 U.S. 490 (1918); People v.Michigan Bell Telephone Co., 246 Mich. 198, 224 N.W. 438 (1929). It is, however, possible for one corporation to exercise substantial control over another without reaching the point at which the separate corporate identities are effectively merged. Certainly, ownership of a majority of the corporation's stock represents an obvious opportunity to exercise substantial indirect control through the selection of directors. Indeed, the ownership of less than a majority of stock can confer effective control of a corporation. Rochester Telephone Corporation,307 U.S. at 145. The potential power of indirect control through the selection of directors is something more than a mere possibility with respect to directors of a public utility corporation who are required by law to maintain direct involvement in the management of the corporation's property, affairs and business. Sec.182.0135(1), Stats. *Page 151 
The Commission, in its consideration of the control that a holding company could exercise over a public utility, may wish to consider the substantial abuse of the holding company device which occurred at the national level. In 1928 the United States Senate ordered the Federal Trade Commission to investigate the development of national holding companies which controlled extensive networks of public utility corporations. That inquiry ascribed to the holding companies a wide range of abuses and determined that the resulting utility systems were, by virtue of their diversity and complexity, beyond effective regulatory control. Federal Trade Commission Report, Utility Corporations, S. Doc. No. 92, 70th Cong., 1st Sess. 62 (1935); Buchanan, ThePublic Utility Holding Company Problem, 25 Cal. L. Rev. 517 (1937). Congress thereafter enacted the Public Utility Holding Company Act of 1935 to control and, in effect, to eliminate interstate utility holding companies, 15 U.S.C.A. § 78 etseq. On the question of control, the act created a rebuttable presumption that a holding company which owned ten percent or more of the outstanding voting securities of a public utility thereby controlled or exercised a controlling influence over the utility operation. 15 U.S.C.A. § 79(b)(7). The United States Supreme Court upheld that presumption noting that, "[d]omination may spring as readily from subtle or unexercised power as from arbitrary imposition of command. To conclude otherwise is to ignore the realities of inter-corporate relationships." NorthAmerican Co. v. Securities Exch. Comm., 327 U.S. 686, 693
(1946). The prospect confronting the Commission here is total ownership of utility common stock by the proposed holding company and that, almost unavoidably, confers at least indirect control over the public utility corporation.
The statutory definition of "public utility" expressly includes any corporation that may "operate, manage or control" utility plant or equipment used to provide utility service. Sec.196.01(1), Stats. The Wisconsin Traction decision indicates that limited, unexercised control together with a financial stake in the utility operation is a proper basis upon which to determine a corporation to be a "public utility." "Control," in the context of the Commission's primary obligation to protect the interest of the public, must mean not only the total corporate domination that constitutes a de facto merger but must also include the power to exercise indirect control over utility operations through stock ownership. Here the ownership of all common stock of the utility by the holding company would constitute an obvious, *Page 152 
direct financial interest in the utility operation and would enable the holding company to exercise substantial indirect control through the directors of the utility corporation. The question of whether a particular holding company would be a "public utility" is for the Commission to decide but the circumstances you describe appear to provide a solid basis to assert regulatory jurisdiction.
The fact that the proposed holding company would be able to exercise control of utility operation through stock ownership is not the only basis for Commission jurisdiction. The proposed holding company is not simply a corporate investor acquiring utility stock in an arm's length transaction. In my opinion, the relationship between the proposed holding company and the existing public utility corporation could create a separate, alternative basis upon which the Commission could properly regard the holding company as a public utility.
Two factors, aside from the factual question of power to control, imply very forcefully that the Commission should not regard the proposed holding company as an entity legally distinct from the public utility corporation. The first is the fact that the initiative for the creation of the proposed holding company stems in large measure from the public utility corporation itself. Thus, the very manner in which the new holding company is being formed suggests that it is in fact merely an instrumentality of the public utility corporation. More importantly, I understand that one purpose of the holding company arrangement is to shield non-utility business ventures from Commission jurisdiction. It therefore appears that the proposed holding company is a mechanism to avoid Commission jurisdiction with respect to the non-utility business interests of the public utility corporation. These circumstances constitute, in my view, a proper basis for the Commission to regard the proposed holding company as a part of the public utility corporation and thus a "public utility" within the meaning of sec. 196.01(1). Stats.
The Commission has been assigned authority to monitor the non-utility business ventures of public utilities. Section196.06(2), Stats., provides:
 Every public utility engaged directly or indirectly in any other business than that of the production, transmission or furnishing of heat, light, water or power or the conveyance of telephone *Page 153 
messages or telegraph messages shall, if required by the commission, keep and render separately to the commission in like manner and form the accounts of all such other business, in which case all the provisions of this chapter shall apply to the books, accounts, papers and records of such other business.
The foregoing subsection derives, without substantive change, from sec. 1797m-8(2) of the initial enactment of state utility regulation, ch. 499, Laws of 1907. The Legislature acknowledged at the beginning of utility regulation that public utilities would be able to engage in non-utility businesses but provided to the Commission the power to monitor such activity as it saw fit.
The Legislature could properly regard regulation of non-utility business ventures to be necessary to protect the public's interest in utility service. As I have indicated, the primary purpose of the public utility regulation by the Commission is the protection of consumers. The development by a public utility of disparate interests and responsibilities could divert the attention of corporate managers from what would otherwise be their sole concern, namely, efficient utility service. CF. UnitedAir Lines, Inc. v. Civil Aeronautics Bd., etc., 569 F.2d 640, 646
(D.C. Cir. 1978). The rate setting process requires that the operating costs of the public utility be accurately determined. Costs associated with non-utility business ventures are to be segregated from utility-related costs and that may be exceedingly difficult to do where personnel and equipment are used for utility and non-utility activities. Cf. Smith v. Illinois BellTeleph. Co., 282 U.S. 133, 150 (1930). Moreover, significant business losses in non-utility ventures must inevitably have an impact upon the financial stability of the public utility. Lilienthal, Regulation of Utility Holding Companies, 29 Colum. L. Rev. 404, 431 (1929). The power to review the non-utility business of a public utility is a logical and essential adjunct to the Commission's fiduciary responsibility with respect to the basic financial stability of the utility. Secs. 184.02, 184.03
and 184.11, Stats. Clearly, the Legislature authorized the Commission to monitor the non-utility business involvements of public utilities as part of the comprehensive jurisdiction assigned to the Commission.
The theoretical distinction between separate corporate identities will be disregarded where it is a device to evade proper regulatory jurisdiction. 1 W. Fletcher, Cyclopedia of theLaw of Private Corporations, sec. 45, at 252 (ed. 1974). Chicago,M. St. P. R. Co. v. *Page 154 Minneapolis C. C. Asso., 247 U.S. 490 (1918); Tenn. PublicServ. Com'n v. Nashville Gas Co., 551 S.W.2d 315, cert. denied434 U.S. 904, reh'g denied, 434 U.S. 988 (1977); May DepartmentStores Co. v. Union Electric L. P. Co., 341 Mo. 299, 107 S.W.2d 41
(1937); People v. Michigan Bell Telephone Co., 246 Mich. 198,224 N.W. 438 (1929); Ohio Mining Co. v. Public UtilitiesCommission, 106 Ohio St. 138, 140 N.E. 143 (1922); GeneralTelephone Co. of the Southwest v. United States, 449 F.2d 846
(5th Cir. 1971). The Wisconsin Supreme Court, in General MotorsA. Corp v. Commissioner of Banks, 258 Wis. 56, 45 N.W.2d 83,46 N.W.2d 328 (1950), considered the relationship between the Motor Insurance Corporation (MIC), a wholly-owned subsidiary of the General Motors Corporation which provided automobile insurance and the General Motors Acceptance Corporation (GMAC), another wholly-owned corporation which financed the purchase of new automobiles. The Legislature had enacted a limit upon the amount of commission that could be paid as a rebate to automobile dealers by lenders such as GMAC. Shortly after that limit was adopted, MIC was created, and began paying to dealers an "insurance commission" for each policy written. The commissioner of banks determined that these commissions constituted indirect additional payments by GMAC in violation of the maximum allowable rebate. The court found the commissioner had a proper factual basis to determine that the two corporations were separate in name only and observed, "[i]n legal language each corporation is considered as a separate entity. Separate corporations with common stock ownership, however, should not be treated as separate entities if reasonable regulation is hampered thereby." 258 Wis. at 64a. I understand that the separate holding company corporate entity is being formed by the public utility corporation apparently with the express purpose of removing from the jurisdiction of the Commission non-utility business activities that would otherwise fall within the ambit of sec.196.06(2), Stats. Whether the proposed holding company is to be regarded as a separate entity remains a question of fact for the Commission but it is difficult to avoid the conclusion that it is merely an instrumentality to evade proper regulatory control.
The fact that the proposed holding company would be subject to Commission jurisdiction pursuant to secs. 196.52 and 196.79, Stats., does not preclude the Commission from treating the holding company as a "public utility" within the meaning of sec.196.01(1), Stats. *Page 155 
Clearly, the formation of the proposed holding company would be a "reorganization" of the existing public utility corporation which would require the prior approval of the Commission pursuant to sec. 196.79, Stats. While a "reorganization" may be compelled by the creditors of a corporation in financial distress, the term also may refer to a restructuring by or on behalf of the stockholders to modify the character of the corporate entity.Huber v. Martin, 127 Wis. 412, 105 N.W. 1031, 105 N.W. 1135
(1906);15 W. Fletcher, Cyclopedia of the Law of PrivateCorporations, secs. 7201 and 7216 (ed. 1973); VoluntaryReorganization of Corporations, 23 Marq. L. Rev. 192 (1938). Presumably, the proposed transaction would be regarded as a "reorganization" within the meaning of sec. 71.368, Stats. Cudahyv. Tax Comm., 226 Wis. 317, 276 N.W. 748 (1937). A plan by which an air carrier sought to diversify through the formation of a holding company, something apparently very similar to that which now is proposed by a Wisconsin public utility corporation, was described as a "reorganization" in United Air Lines, Inc. v.Civil Aeronautics Bd., etc., 569 F.2d 640 (D.C. Cir. 1977). In my view, there appears to be no real question but that the proposed formation of the holding company and the exchange of common stock would be a "reorganization" of the utility corporation within the meaning of sec. 196.79, Stats., and thus subject to the prior approval of the Commission. Potentially, the Commission's jurisdiction to regulate affiliated interests pursuant to sec.196.52, Stats., may also require that there be prior Commission approval of the formation of the proposed holding company. The holding company would, by virtue of stock ownership, be an "affiliated interest" of the existing public utility. Sec.196.52(1)(a), Stats. The Commission must approve any contract or arrangement whereby a public utility provides to an affiliated interest any service, property or right worth more than $10,000. Sec. 196.52(3), Stats. Arguably, the effort to form the holding company, including the planning and promotion of the idea, is itself an arrangement for providing services which may require prior Commission approval depending upon the value of those services. The fact, however, that the formation of the proposed holding company would require prior Commission approval under sec. 196.79, Stats., and possibly under sec. 196.52, Stats., in no way suggests any limitation upon the power of the Commission to determine the holding company to be a "public utility." Neither sec. 196.79 nor sec. 196.52, Stats., would subject the holding company or the public utility to *Page 156 
conflicting or inconsistent requirements. The potentially overlapping jurisdiction based upon secs. 196.79 and 196.52, Stats., together with the broad, inclusive definition of "public utility" in sec. 196.01(1), Stats., illustrate clearly the intent that the interest of the public be represented by the Commission before fundamental changes in the control of a public utility corporation are undertaken.
It is noteworthy that the Commission's regulatory jurisdiction over an affiliated interest is far less extensive than it is with respect to a "public utility." For example, a corporation which is a "public utility" must obtain Commission approval for the issuance of securities while an affiliated interest need not do so. Sec. 184.03, Stats. It should also be noted that the affiliated interest concept was adopted in Wisconsin and elsewhere at a time when state utility commissions were unable to effectively regulate large national utility holding companies. The enactment of sec. 196.52, Stats., was an effort to gain some small degree of control over dealings between jointly held subsidiary corporations which were arguably immune from state regulation because of their interstate character. It was an attempt, without notable success, to indirectly control corporations that could not be subjected to direct state regulation as "public utilities." It most certainly was not intended to diminish the Commission's authority with respect to a corporation which is operating within Wisconsin and is within the definition of a "public utility" as set forth in sec. 196.01(1), Stats.
In summary, it is my opinion that the Commission has the authority to determine that a holding company formed by a public utility corporation is itself a "public utility" within the meaning of sec. 196.01(1), Stats., where the holding company possesses the power to control the utility property or where the arrangement is a device to enable the public utility corporation to evade regulatory jurisdiction.
BCL:DTF *Page 157